## EX PARTE EDWARD BERGER.

### In Banc, January 23, 1906.

1. **INTEREST: Criminal Statute: Constitutional.** The statute which makes it a misdemeanor to charge a greater rate of interest than two per cent per month, is constitutional. It is within the power of the Legislature to make usury a crime and punish it as such.

2. **LEGISLATIVE POWER: Extent of.** While the Constitution does not define leglislative power, yet, generally speaking, the Constitution, in vesting the legislative power in the General Assembly, subject to the limitations therein contained, empowered the General Assembly to enact any law necessary to the welfare of the people not prohibited by the Constitution of the United States or the Constitution of the State.

3. ————: **Usury: Public Policy: Enforcement of Interest Laws.** Laws against usury are founded on principles of public policy, principles that have for ages been recognized, and a law which makes the charging of a rate of interest in excess of two per

Ex Parte Berger.

cent a month a misdemeanor seeks only to punish that which for ages has been considered unlawful within itself. It is within the power of the Legislature to fix the maximum rate of interest for the use of money, and to enforce obedience to such law either by forfeiture of the interest or principal, or by making the usury a misdemeanor punishable as a crime.

4. ———: What Usury Criminal: Grading the Offense: Constitutional Rights. It was competent for the Legislature to determine the taking of what usurious interest should constitute a criminal offense. It had the power to declare that the charging of more than eight per cent annual interest should be usury, and to make it a criminal offense to charge more than two per cent a month, and to provide no punishment except forfeiture for those who charge less than two per cent a month but more than eight per cent per annum. And in doing so, it did not violate the constitutional provision which prohibits a State from "denying to any person within its jurisdiction the equal protection of the laws," nor the other provision which prohibits the Legislature from passing any special law granting to "any corporation, association or individual any special or exclusive right, privilege or immunity," for the statute making it a crime to charge more than two per cent per month is a general law, applicable to all persons who violate it.

5. ———: ———: Raised by Accused. It does not lie in the mouth of one guilty of violating a general law to say that there are other classes of like offenders to which the law might have been applied.

6. USURY: Criminal Statute: Applicable to all Persons: Commissions: Ejusdem Generis. The statute which declares that "every person, company, corporation or firm, who shall take or receive, directly or indirectly, by means of commissions or brokerage charges, or otherwise," any rate of interest in excess of two per cent a month, shall be guilty of a misdemeanor, applies to every person who takes any interest, directly or indirectly, by means of commissions or brokerage charges or otherwise in excess of two per cent per month. The words "commissions or brokerage charges, or otherwise,' do not, according to the rule of *ejusdem generis*, mean to limit the act to persons who receive interest by means of commissions or brokerage charges, but the statute applies to all persons who charge interest of more than two per cent per month, whether the charge is directly as interest, or indirectly as commissions or brokerage charges.

## Habeas Corpus.

PETITIONER REMANDED.

193 Sup.—2

*Kinealy & Kinealy* for petitioner.

(1) Section 2358 is unconstitutional (Const. U. S. amend. 14, sec. 1; Const. Mo. art. 2, sec. 30), because it denounces and punishes as a crime the doing of an act which it is not within the power of the Legislature to so denounce and punish, and it thereby deprives petitioner of his liberty without due process of law. This conclusion results from a consideration of the following propositions, viz.: (a) Courts will never enforce void contracts, but they will voidable ones. Och v. Railroad, 130 Mo. 27; Mitchell v. Parker, 25 Mo. 31; Ins. Co. v. Railroad, 74 Mo. App. 89. (b) Usurious contracts are not void, but only voidable. Montany v. Rack, 10 Mo. 318; Ferguson v. Soden, 111 Mo. 208; Davis v. Tandy, 107 Mo. App. 437; Smith v. Mohr, 64 Mo. App. 39; Johnson v. Simmons, 61 Mo. App. 395; Am. Rubber Co. v. Wilson, 55 Mo. App. 656. (c) Courts will not enforce contracts which are contrary to our laws or public policy. McDearmott v. Sedgwick, 140 Mo. 172; 15 Am. and Eng. Ency. Law (2 Ed.), 935; McGinnis v. Mo. C. & F. Co., 174 Mo. 225; Guerney v. Moore, 131 Mo. 650. (d) Foreign contracts, if legal in their domicile, will be enforced in Missouri, although usurious under our laws. Bank v. Cooper, 85 Mo. App. 383; Land Co. v. Rhodes, 54 Mo. App. 129. There is no iniquity or moral turpitude in usury. Bank v. Harrison, 57 Mo. 503; Adler Co. v. Corl, 155 Mo. 149; Webb on Usury, sec. 488, p. 570. (e) The Legislature cannot arbitrarily declare an act a crime if it really be not such, and such an enactment will be declared unconstitutional by the courts. State v. Layton, 160 Mo. 474; In re Flukes, 157 Mo. 125. (f) A crime is a wrong against the public at large, and the power to declare a given act a crime proceeds from the exercise of the police power of the State. 12 Cyc. Law & Proced., 129; 8 Am. and Eng. Ency. Law (2 Ed.), 248; 1 Tiedeman, State & Fed. Control of Pers. & Prop., p. 179; Clark's Crim. Law, p. 1; United

States v. Eaton, 144 U. S. 677; Const. of Mo., art. 6, sec. 38; Gillespie v. People, 188 Ill. 176; Black v. Schwartz, 27 Utah 387.  (g)  An act which is essentially a wrong against the individual can never be punished as a crime if done with the consent of the individual.  State v. West, 157 Mo. 309; 1 Wharton's Crim. Law, secs. 141 and 143; Desty's Crim. Law, sec. 33.  (2)  Section 2358 is unconstitutional (Const. U. S., amend. 14, sec. 1; Const. of Mo., art 4, sec. 53.), because it is a special law granting special privileges and immunities, and denies to petitioner the equal protection of the law.  Howell v. Stewart, 54 Mo. 400; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95; State ex rel. v. Miller, 100 Mo. 439; Dunne v. Railroad, 131 Mo. 1.

*Reed, Yates, Mastin & Howell* also for petitioner.

Two points are made by the petitioner in his brief as to the constitutionality of the statute under which petitioner was arrested:  1.  The section is unconstitutional because it punishes as a crime the doing of an act which it is not within the power of the Legilature to so punish, and thereby deprives petitioner of his liberty without due process of law.  2.  The statute is unconstitutional because it is a special law, granting special privileges and immunities and denies to petitioner the equal protection of the law.  In support of petitioner's second point, we desire to suggest to the court that in addition to the classification of the persons by petitioner into those who take or receive or agree to take or receive usurious interest at a rate greater than two per cent per month, and at a rate less than two per cent per month under the statute, there is another distinctive class aimed at by the statute, and as it appears to us the only class contemplated by the statute, namely, those who shall take or receive or agree to take or receive directly or indirectly by means of commissions or brokerage charges or otherwise, any interest at a greater rate

than two per cent per month, etc. A comparison of
other usury sections of the statute of Missouri and the
statutes of other States show that the words "directly
and indirectly" in usury statutes are in common use
without language explaining or defining their meaning.
Sec. 1, ch. 133, Laws 1889, South Dakota; sec. 1, ch. 63;
Bank v. Allen, 28 Conn. 101. The Missouri statutes
applicable to the subject are as follows: secs. 1934, 2358,
3708, 3709, R. S. 1899. In all the statutes and cases in
construction thereof, the words "directly or indirectly"
have been deemed sufficient to cover every device in-
vented for the purpose of charging interest, and the
words used by section 2358, "by means of commissions
or brokerage charges," are evidently designed as words
of limitation. In sections 1934 and 3708, Revised Stat-
utes 1899, the words "directly or indirectly" without
more are used. It cannot be contended that these stat-
utes would not cover an indirect charge of interest by
means of brokerage and commissions—therefore, the
conclusion from an examination of these sections is that
the qualifying words used in section 2358 "by means
of commissions or brokerage charges," etc., were de-
signed for the purpose of limiting the effect of the stat-
ute to those words. In section 3709, the words "directly
or indirectly" are omitted, and in that section the words
are added, "whether paid as commission or brokerage,
or as payment upon the principal, or as interest on
said indebtness." Any other construction of this stat-
ute would leave the words, "by means of commissions
or brokerage charges," wholly without meaning or pur-
pose in the statute, and the words are intended to de-
fine the kind of illegal charge of interest aimed at by
the statute. It is a common canon of construction that
all the words of a statute must be construed in such way
as to give them effect if possible, and in connection with
the words that accompany them. State v. Gilmore, 98 Mo.
206; State v. Hays, 78 Mo. 600. It will be observed that
the act does not make it an offense to "directly or indi-

rectly" take or receive or agree to take or receive, for the forbearance or use of money, any interest at a rate greater than two per cent, but the offense consists in taking, etc., such interest "by means of commissions or brokerage charges or otherwise," thus placing outside the ban of the statute all of those usurers who take such interest by other or different methods. Inasmuch as the words "or otherwise," under the well-established rule of statutory construction *ejusdem generis*, can apply only to methods similar to those enumerated, it is clear that those affected by the act are only those who exact interest by way of commissions or brokerage charges. That the words "or otherwise" can have no more extended meaning is clear from our Missouri authorities. State v. Schuchman, 133 Mo. 116; State v. Krueger, 134 Mo. 263; State v. Edwards, 109 Mo. 320; State v. Gilmore, 98 Mo. 213. This being true, the statute leaves all persons free to receve or agree to receive usury in excess of two per cent per month, if haply they can invent some means of providing for its payment other than by way of commissions or brokerage charges. If it be said that section 2358 is susceptible of another construction if the punctuation be changed from that used by the Legislature, we reply that the punctuation is a part of the act, and the act being penal in its nature, a defendant is not to be punished by having resort to this necessity. U. S. v. Voorhees, 9 Fed. 143; U. S. v. Pelletran, 14 Blatchf. (U. S.) 126; Tyrrell v. New York, 159 N. Y. 242; Commissioners v. Elwood, 193 Ill. 308.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

(1) In the exercise of its police power, the State may enact any law that is designed to suppress or punish a wrong, to mitigate an evil, to prevent extortion or oppression, or which tends to preserve the general welfare of the community. No person has an absolute right

to engage in any business which contravenes these purposes. State ex rel. v. Mercantile Co., 184 Mo. 160; State ex rel. v. Associated Press, 159 Mo. 437; Westport v. Mulholland, 159 Mo. 86; State v. Whitaker, 160 Mo. 59; State Layton, 160 Mo. 474; State v. Searcy, 20 Mo. 489; State ex rel. v. Ashbrook, 154 Mo. 375; State v. Thompson, 160 Mo. 333; St. Louis v. McCann, 157 Mo. 301; State v. Bixman, 162 Mo. 1; State v. Cantwell, 179 Mo. 245; State v. Loomis, 115 Mo. 307; State ex rel. v. Firemen's Fund Ins. Co., 152 Mo. 1; State v. Addington, 12 Mo. App. 214; Morrison v. Morey, 146 Mo. 543; Durant v. Coal Co., 97 Mo. 65; Humes v. Railroad, 82 Mo. 231; Cofer v. Riseling, 153 Mo. 633; Kreibohm v. Yancey, 154 Mo. 67; State v. Hamey, 168 Mo. 167; St. Louis v. Galt, 179 Mo. 8; State v. Loomis, 20 S. W. 332. (2) A statute which relates to persons or things as a class is a general law, while a statute relating to particular persons or things of a class is a special law. If every person within the operation of the act is affected generally by the act, it is a general, not a special law. Phillips v. Railroad, 86 Mo. 540; State ex rel. v. Tolle, 71 Mo. 654; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163; State v. Bishop, 128 Mo. 373; State ex rel. v. Yancey, 123 Mo. 391; State ex rel. v. Ins. Co., 150 Mo. 113; Holden v. Hardy, 169 U. S. 394; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Marion Co., 128 Mo. 427; Hamman v. Central Coal Co., 156 Mo. 232; State ex rel. v. Firemen's Fund Ins. Co., 152 Mo. 1; Ex parte Loving, 178 Mo. 194; State ex rel. v. Wasburn, 167 Mo. 680. (3) Missouri courts have recognized the right of the Legislature to regulate the interest on money, and to fix penalties for exacting more than the law provides. Such laws are constitutional. Mitchell v. Griffith, 22 Mo. 515; Hilgert v. Levin, 72 Mo. App. 48; Deane v. Howser, 83 Mo. App. 609; Arbuthnot v. Brookfield L. & B. Ass'n, 98 Mo. App. 383; McDonnell v. DeSoto Sav. Ass'n, 175 Mo. 250;

Ferguson v. Soden, 111 Mo. 208; Adler Clothing Co. v. Corl, 155 Mo. 149; Kreibohm v. Yancey, 154 Mo. 67. (4) The Legislature has the power to pass any law not prohibited by the Constitution. Ex parte Roberts, 166 Mo. 212; Morrow v. Kansas City, 186 Mo. 675. (5) In the supplemental brief filed by counsel for petitioner, it is contended that the words, "by means of commissions or brokerage charges," following the words, "directly or indirectly," are designed as words of limitation. The whole clause should be read together, and when so read, the intention is plainly manifested to cover the exaction of usurious interest, which is "direct;" or the exaction of commissions or brokerage charges, which would be indirect. This is plain enough, but to relieve the matter of all doubt, the words "or otherwise" are inserted after the words "by means of commissions or brokerage charges." The catch words at the beginning of the section read as follows: "Receiving greater interest than two per cent per month, etc." These words were not incorporated in the original act as it passed the Legislature and as it appears in the Laws of 1899, but in that act words of a similar import were used, as follows: "Interest in excess of two per cent per month, usurious—penalty." The act itself is entitled, "An act to prevent the taking of more than two per cent per month interest on the forbearance or use of money or other commodity, making the violation thereof a misdemeanor, and prescribing the penalty therefor." Laws 1899, p. 167. If that canon of construction, that all words of a statute must be construed in such a way as to give them effect, invoked by the petitioner, is applied here, it will justify, not the confined and limited interpretation he asks for, but will support and sustain a construction which will prohibit all exactions, whether in the nature of commissions, or classified as direct interest. (6) All laws are presumed to be constitutional, and will be so declared, unless their

unconstitutionality appears beyond a reasonable doubt. State v. Thompson, 144 Mo. 314; State ex rel. v. Aloe, 152 Mo. 466; State ex rel. v. Pike Co., 144 Mo. 275; Ex parte Loving, 178 Mo. 194; State v. Etchman, 189 Mo. 648.

GANTT, J.—This is an original proceeding by habeas corpus for the release of the petitioner on the ground that section 2358, Revised Statutes 1899, is unconstitutional, and his arrest for violation thereof, therefore, is without any legal authority or justification.

The petitioner was arrested by the constable of Central township, St. Louis county, under and by virtue of a warrant issued by I. W. Campbell, a justice of the peace within and for said township, upon an information filed before said justice of the peace by the prosecuting attorney of said county on the 11th of September, 1905, and was in the custody of said constable at the time the application for this writ was made and issued, and is now under bail awaiting the action of this court upon his application. The information upon which he was arrested charges that the petitioner on the 22nd day of August, 1905, in said St. Louis county, did then and there receive from one Frank T. Henry, interest at a greater rate then two per cent per month, for the use of one hundred dollars, loaned by the petitioner to said Henry on the 19th of July, 1905, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

Section 2358, Revised Statutes 1899, is in these words:

"Sec. 2358. *Receiving greater interest than two per cent per month*, etc.—*misdemeanor, when—penalty.* —Every person or persons, company, corporation or firm . . . who shall take or receive, directly or indirectly, by means of commissions or brokerage charges, or otherwise, for the forebearance or use of money or other commodities, any interest at a rate greater than

two per cent per month, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, and by imprisonment in the county jail for a period of not less than thirty days nor more than ninety days. `Nothing herein contained shall be construed as authorizing a higher rate of interest than is now provided by law."

The constitutionality of this section is challenged on four grounds: First, that it is in violation of section 1 of article 14 of the amendments of the Constitution of the United States which prohibits any State from depriving "any person of life, liberty or property without due process of law." Second, because it violates section 30 of article 2 of the Constitution of the State of Missouri which provides "that no person shall be deprived of life, liberty or property without due process of law." Third, because it is a violation of that portion of section 1 of article 14, of the amendments to the Constitution of the United States which prohibits "any State from denying to any person within its jurisdiction the equal protection of the laws." Fourth, because it violates section 53 of article 4 of the Constitution of the State of Missouri which prohibits the Legislature from "passing any special law granting to any corporation, assocation or individual any special·or exclusive right, privilege or immunity."

I.   Prior to the enactment of section 2358 on the 14th of April, 1899, the taking of usurious interest had never been declared a criminal offense by the General Assembly of the State of Missouri, and it is now earnestly insisted by learned counsel for petitioner that this section is unconstitutional, because it is not within the power of the Legislature to make usury a crime and punish it as such.

This is a far-reaching proposition. The Constitution of this State ordains that the legislative power, subject to the limitations therein contained, shall be vested

in a Senate and House of Representatives to be styled
The General Assembly of the State of Missouri. [Art.
4, Constitution of Missouri.] This legislative power is
not defined; it is a general grant by the people to enact
all laws necessary for the welfare of the people of the
State.    Generally speaking, the Legislature of this
State has the power to enact any law not prohibited by
the Constitution of the United States or the Constitu-
tion of this State.

With much industry the learned counsel for the
petitioner has collated a long line of decisions in this
State to the effect that usurious contracts are not void,
but voidable, and that courts will not enforce contracts
which are contrary to our laws or public policy. These
two propositions do not require the citation of any au-
thorities, but they have little or no bearing upon the
question raised here, to-wit, that the Legislature has no
power to declare the taking of usurious interest a crim-
inal offense. It may be conceded that at common law
usury was not an indictable offense, yet it is a fact that
various acts of the British Parliament made usury a
crime and the states of Indiana, Massachusetts, New
Hampshire, New York, South Dakota and Tennessee all
have statutes making the taking of usurious interest a
misdemeanor, and in none of these states have we been
able to find that the constitutionality of such legislation
has ever been denied. The State, through its Legisla-
ture, may enact any law that is designed to suppress or
punish a wrong, to mitigate an evil, prevent extortion or
oppression. Obviously it is no objection to a criminal
statute that the crime denounced was not one indictable
at common law, or that it should have been prohibited
specifically by some prior statute. If such were the
case, then there could be no legislation on the subject of
crime, however urgent and flagrant the offense had be-
come in the various changes of society. Dr. Wharton
in his Criminal Law (10 Ed.), sec 14a, says: "It has
been often said that at common law indictability and

immorality are convertible terms. So far, however, from this being the case, there are indictable acts which are not immoral, and immoral acts which are not indictable." At common law illegal acts are often declared misdemeanors without any precedent.

In Kreibohm v. Yancey, 154 Mo. l. c. 83, section 3710, Revised Statutes 1899, was challenged on the ground that it was in conflict with the fourteenth amendment of the Constitution of the United States, and sections 4 and 30 of article 2, and section 33 of article 4, of the Constitution of Missouri. Responding to that contention, this court, through BRACE, J., said: "The main argument in support of this contention impugns the constitutionality of usury laws generally, on the ground that such laws are in restraint of the right of contract, and are not a legitimate exercise of the police power. It would serve no good purpose to review this argument at length. The power to regulate the rate of interest has been exercised by every civilized nation, ancient or modern, whose laws survive in history. [Dunham v. Gould, 16 Johnson 367.] In Anglo-Saxon civilization, laws against usury have always been in force. By the Canon law interest and usury were synonymous terms, and it was unlawful to take any money for the use of money, and this law was rigidly enforced by the temporal authorities of England until the reign of Henry VIII., when the legal right to take interest was first created by act of Parliament (37 Henry VIII., cap. 9), and ever since in England and in this country, this right has existed in legal contemplation as the creature of statutory enactment. As was said by Mr. Justice FIELD in Munn v. Illinois, 94 U. S. l. c. 153, 'The practice of regulating by legislation the interest receivable for the use of money, when considered with reference to its origin, is only an assertion of right of the government to control the extent to which a privilege granted by it may be exercised and enjoyed.' It was in this light that the right was regarded in the

Colonies when the Federal government was organized and the Constitution adopted. And ever since, the right has been so recognized and exercised by the states severally, in all of which, with perhaps one or two exceptions, statutes have been enacted and are in force regulating the rate of interest. [27 Am. and Eng. Ency. of Law, 929, note 2; Tyler on Usury, chap. 3.] And however much these laws may have been criticised and inveighed against by some publicists and text-writers, they have been so uniformly sustained by the courts, that now it is conceded by some of the latest of these writers that their enactment has so long been recognized as a constitutional exercise of legislative authority as to render it very unlikely that the courts will pronounce them unconstitutional. [Tiedeman's Lim. of Police Power, sec. 94; Cooley's Prin. Const. Law, p. 235.]''

The taking of interest, then, beyond a legal rate is granted to no person in this State, and the act now before us simply makes the unlawful act of taking interest in excess of two per cent per month a misdemeanor. Laws against usury are founded on principles of public policy, principles that have for ages been recognized, and this act seeks only to punish that which has for many ages been considered unlawful in itself. The right to regulate interest by legislative enactment being one conceded to be within the power of the Legislature, that body can regulate or prohibit it altogether. And if previous legislation on this subject punishing the infractions of usury laws by forfeitures of the interest have proved ineffectual to check the evil, it was perfectly competent for the Legislature to adopt more drastic measures and make it criminal. If the Legislature had the power to say what rate of interest in its own opinion transcended a fair and just remuneration for the loan of money or property, it was competent to make any excess over such rate a misdemeanor. In our opinion it would have been perfectly competent for the

Legislature to have made it a misdemeanor to exact and receive interest over and above the legal rate fixed by law, but certainly the act now under review is not open to the objection of being unreasonable, inasmuch as it only denounces the taking of interest beyond two per cent per month as criminal. Certainly it would seem that two per cent per month would gratify the greed of the most unconscionable usurer, and this act is leveled only at that class who take and receive interest beyond that amount. Responding then to the first contention of the petitioner, we hold that the act was not beyond the legitimate powers of the General Assembly.

It would subserve no good purpose to review all the various distinctions of crime given by the various courts or text-writers from time to time. Under our system of government the people through their Legislatures have the power to define or punish crimes when not restrained by the organic law of the State or the Federal government. It is sometimes announced by some of the courts and some of the ablest law-writers of this country, that no act of the Legislature can be declared void unless it contravenes some specific section or provision of the State or Federal Constitution; on the other hand, it has been held that there are limits beyond which legislation cannot rightfully go, even though the courts may not be able to point to a positive prohibition against it in the Constitution, but this case does not call for any discussion of that power, holding as we do that it is within the power of the Legislature to fix a maximum rate of interest for the use of money, and we have no doubt of the power of the Legislature to enforce obedience to such a law, whether by forfeitures of the interest or the principal, or by making it a misdemeanor punishable as a crime, and certainly there is nothing in the particular act before us which requires any vindication of the moderation of the Legislature in making the receiving of interest beyond two per cent per month a misdemeanor.

II.   It is urged, however, that the act is unconstitutional in that it violates that portion of section one of article 14 of the amendments to the Constitution of the United States, which prohibits any State from denying "to any person within its jurisdiction the equal protection of the laws," as well also section 53, article 4, of the Constitution of Missouri, which provides that  the Legislature shall not pass  any  special law  granting to "any corporation, association or individual any special or exclusive right, privilege or immunity."   To sustain this latter contention it is urged that  our  statute relating to interest authorized the taking of certain prescribed rates, the highest being eight per cent per annum, thus money-lenders are divided into two classes, those who receive or agree to receive interest within the statutory provisions, and those who receive or agree to receive amounts in excess of the statutory limit, and it is insisted that section 2358, Revised Statutes 1899, takes this latter natural class and arbitrarily divides it into two sub-classes, to-wit, those who receive or agree to receive interest at the rate of two per cent or less, per month, and those who receive or agree to receive unauthorized interest in excess of that amount, and make criminals of the latter sub-class, but not of the former, and thus the Legislature has been guilty of class legislation.   It is the rule of long established construction in this State "that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special." [State ex rel. v. Tolle, 71 Mo. 1. c. 650.]   It is insisted that all usurers stand upon exactly the same footing, inasmuch as they are all doing something which the law does not authorize them to do, and that, therefore, it was not competent for the Legislature to select that particular class of usurers who receive or agree to receive interest in excess of the rate of two per cent per month, and exclude those usurers who receive or agree to receive more than eight per cent per year

and not over two per cent per month. We cannot agree
to this contention. In our opinion it is perfectly com-
petent for the Legislature to determine for itself what
amount of usurious interest, the taking or receiving of
which should constitute a criminal offense. It had al-
ready provided for the forfeiture and penalties which
should attach for the taking of all usurious interest, but
in denouncing for the first time as a crime a class of
usurers, it had the power to select that class which takes
or receives greater interest than two per cent per
month. It did not attempt to affect any other class and
it is a general law as far as this class is concerned. The
law operates upon every person within the limits of the
State who violates it. It does not lie in the mouth of
one guilty of transgressing it, to say to the Legislature,
there are other classes to which this law might apply.
The same could be said of nearly any other criminal
statute. Had this law exempted any person who exact-
ed more than two per cent per month by mere arbitrary
provision, there would be force in the argument of
counsel, but there is no such exception to be found in
the act. It applies to all persons who are in or who may
come into like situations and circumstances and is
therefore not special or class legislation within the
the meaning of either of the constitutional provisions
above relied on.

III. But it is further insisted that the act by its
very terms excludes all usurious interest except such
as is taken ''by means of commissions or brokerage
charges,'' and when thus read is clearly unconstitution-
al, because the equal protection of the law is not grant-
ed to all persons by this act, because it attempts another
arbitrary distinction, in this, that its provisions are
plainly leveled only at that class of usurers who charge
more than two per cent per month directly or indirectly,
''by means of commissions or brokerage charges or
otherwise,'' thus excluding all other classes who receive
or agree to receive such usury directly or by any other

method than by means of commissions or brokerage charges. In aid of this construction the rule is invoked that in the interpretation of a statute every word and clause should, if possible, have assigned to it a meaning, leaving no useless words, and it is insisted that the clause "or otherwise" under the well-established rule of statutory construction of *ejusdem generis* can apply only to methods similar to those enumerated and, therefore, the act applies only to those who exact interest "by way of commissions or brokerage charges," and not to the receiving of interest directly or indirectly. The canon of construction that all the words of the statute must be construed in such a way as to give them effect does not justify the confined and limited interpretation which counsel for petitioner would place upon the act, but will support a construction which prohibits all exactions of interest directly or indirectly by means of commissions or brokerage charges or otherwise at a greater rate than two per cent per month. We have no doubt whatever, when the whole act is read together, that it was the intention of the Legislature that it should apply to every person who should take any interest directly or indirectly by means of commissions or brokerage charges or otherwise in excess of a rate of two per cent per month, and, after all, the purpose of all rules of construction is to arrive at the intent of the lawmaking power. The whole section when read together manifests an intention to cover the exaction of usurious interest which is direct and also an exaction of usurious interest of more than two per cent per month by means of commissions or brokerage charges, and hence this third constitutional objection to the act based upon verbal criticism is without foundation.

It results that in our opinion the law assailed in this case is a perfectly constitutional enactment and that the petitioner was in lawful custody at the time of his application to this court for a writ of habeas corpus, and it is therefore ordered that the prisoner be and he is

hereby remanded to the custody of the constable, and that he pay all the costs of this application.

All concur.