KING *et al. v.* THE STATE.

1. The act of 1908 (Acts 1908, p. 83) embodied in Civil Code (1910), §§ 3444, 3445, providing, among other things, that it shall be a crime "to reserve, charge, or take, for any loan or advance of money or forbearance to enforce the collection of any sum of money, any rate of interest greater than five per cent. per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, or contrivance, or device whatever," does not make unlawful a

transaction wherein there is a charge by way of commission for advances, discount, exchange, or fees, or the purchase of salary or wages, save where connected with a loan and directly or indirectly constituting all or a part of a reservation, charge, or taking, for a loan or advance of money, or forbearance to enforce the collection of a sum of money, a rate of interest greater than 5 per cent. per month.

(a) The legislature has the power to fix the maximum rate of interest which may be exacted for the use of money, and to make penal the exaction of a greater rate of interest than 5 per cent. per month.

(b) The act in question does not violate art. 1, sec. 1, par. 2, art. 1, sec. 1, par. 3, or art. 1, sec. 3, par. 2, of the constitution of this State; nor does it violate the ninth or fourteenth amendment to the constitution of the United States. The act does not violate art. 1, sec. 4, par. 4, of the constitution of this State.

2. The act in question does not prohibit the sale and assignment of "choses in action arising ex contractu."

(a) The fact that "there existed at the time of the passage of this act general laws having uniform operation throughout the State, fixing the rate of interest that might be charged, and providing penalties for the violation of these general laws," does not cause the act to be in conflict with the provisions of art. 1, sec. 4, par. 4, of the constitution of this State, that no special law shall be enacted in any case for which provision has been made by an existing general law.

3. The act does not refer to more than one subject-matter, and does not contain matter different from that expressed in its title; and therefore does not violate art. 3, sec. 7, par. 8, of the constitution of this State, providing: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," the title of the act being as follows: "An act to make it a misdemeanor to charge any rate of interest greater than five per cent. per month, either directly or indirectly, and for other purposes."

AUGUST 19, 1911.

The Court of Appeals certified the following questions:

In the foregoing case an act of the General Assembly of this State, to wit, an act approved August 15, 1908 (Acts 1908, p. 83), entitled "An act to make it a misdemeanor to charge any rate of interest greater than five per cent. per month, either directly or indirectly, and for other purposes," is attacked as being unconstitutional; and a decision of the following constitutional questions involved is necessary to a proper determination of the case:

First, is said act unconstitutional, null, and void upon the following alleged ground? "Said act denies to the defendants [who have been indicted for a violation of it by charging and reserving from a named person a sum of money greater than five per cent.

per month as interest for a loan of money] the impartial and complete protection guaranteed under article 1, section 1, paragraph 2 (Civil Code, § 5699), of the constitution of this State, and denies to the defendant the rights reserved and retained in the ninth amendment (Civil Code, § 6022) of the constitution of the United States, for that all persons are guaranteed the right to sell, own, and buy every species of property not evil in itself and whose use is not hurtful to the public health and public morals. The aforesaid act denies the impartial and complete protection to persons owning and desiring to sell accounts for salary and wages. And for that all persons are guaranteed the right to contract and receive for their services such price as may be agreed upon between the contracting parties. The act in question seeks to deny this impartial and complete right by limiting the compensation that may be contracted for for services rendered, for that the statutes of this State fix notarial fees. The act aforesaid denies to the notary rendering services in cases where money is loaned the impartial and complete protection of this general law fixing notarial fees."

Second, is said act unconstitutional, null, and void upon the following alleged ground? "Said act is in violation of article 1, section 1, paragraph 3 (Civil Code, § 5700), of the constitution of this State, and is in violation of the fourteenth amendment of the constitution of the United States (Civil Code, § 6030), in that it deprives the defendants of their liberty and property without due process of law, and in that it denies to these defendants the equal protection of the laws."

Third, is said act unconstitutional, null, and void for the following alleged reason? "Said act is in conflict with article 1, section 4, paragraph 4 (Civil Code, § 5732), of the constitution of this State, in that it is a special act concerning matters for which provision has been made by existing general laws. For illustration: there existed at the time of the passage of this act general laws having uniform operation throughout the State, fixing the rate of interest that might be charged, and providing penalties for the violation of these general laws. There also existed at the time of the passage of this act general laws permitting the selling and assignment of choses in action arising ex contractu, and the aforesaid act is a special act in conflict with these general laws."

Fourth, is said act unconstitutional, null, and void for the following alleged reason? "Said act is in violation of article 1, section 3, paragraph 2 (Civil Code, § 5735), of the constitution of this State. The people of this State have always enjoyed the inherent right to sell, buy, and own and assign every species of property not evil in itself and not hurtful to the public health or public morals, and not destructive of the public peace. The aforesaid act seeks to deprive the defendants of this inherent right."

Fifth, is said act unconstitutional, null, and void for the following alleged reason? "The aforesaid act is in violation of article 3, section 7, paragraph 8, of the constitution of this State (Civil Code, § 5771), in that it refers to more than one subject-matter, and in that it contains matter in the body of the act different from what is expressed in the title thereof. The title of the act only prohibits the charging of a greater rate of interest than five per cent. per month. The body of the act seeks to prohibit the charging of commission, the charging of exchange, the sale or purchase of accounts for salary or wages, and the charging of notarial fees."

*Rosser & Brandon, Candler, Thomson & Hirsch, R. B. Blackburn, Lamar Hill,* and *J. D. Kilpatrick,* for plaintiffs in error.

*Hugh M. Dorsey, solicitor-general, L. C. Hopkins, Ogburn, Dorsey & Shelton,* and *D. K. Johnston,* contra.

HOLDEN, J. 1. The title to the act attacked as unconstitutional is as follows: "An act to make it a misdemeanor to charge any rate of interest greater than five per cent. per month, either directly or indirectly, and for other purposes." Section 1 of the act, omitting an exception with respect to licensed pawnbrokers, which is hereinafter set out, is as follows: "Be it enacted by the General Assembly of the State of Georgia, that it shall be a misdemeanor, punishable under section 1039 of the Penal Code of this State, for any person, company, or corporation to reserve, charge, or take, for any loan or advance of money or forbearance to enforce the collection of any sum of money, any rate of interest greater than five per cent. per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, or contrivance, or device whatever; save and except only . . . [an exception with reference to licensed pawnbrokers].

Section 2 is as follows: "Be it further enacted, that this statute shall not be construed as repealing or impairing the usury laws now existing, but as being cumulative thereof." Section 3 repeals conflicting laws. This act was designed to prohibit, and does prohibit, transactions "for any loan or advance of money or forbearance to enforce the collection of any sum of money," where the rate of interest reserved, charged, or taken is greater than five per cent. per month. Under the act, a transaction really involving usury amounting to a charge, for the use of money, of interest in excess of five per cent. per month would involve a crime on the part of the one reserving, charging, or taking the usury, where there was a charge "by way of commission for advances, discount, or exchange," or a charge of fees referred to in the act, or the purchase of salary or wages, where such charge or purchase is connected with a loan and directly or indirectly constitutes all or a part of a reservation, charge, or taking, for a loan or advance of money, or forbearance to enforce the collection of a sum of money, a rate of interest greater than 5 per cent. per month. It has often been held that the purchase of property by one, with the right of the seller to rebuy at an advanced price, if a bona fide transaction, is valid; but where the transaction was put in the shape of a sale, with right of the seller to rebuy at an advanced price, as a cover for usury, the court would declare the deed made by the seller void for usury, at his instance. See *Rogers* v. *Blcuenstein,* 124 *Ga.* 501 (52 S. E. 617, 3 L. R. A. (N. S.) 213). If the language, "by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees," had been omitted from the act, a transaction really involving an exaction of interest exceeding five per cent. per month in the ways specified would none the less have been unlawful under the act. The General Assembly perhaps considered that a common evil existed in the covering up of usury by making the charges referred to in the act and in purchases of the kind referred to therein, and thought it best, by way of emphasis, to enumerate these methods in the act itself. In the act, after the language above quoted, follow these words: "or by any contract, or contrivance, or device whatever." The usury against which the act was aimed was not usury confined to the transactions specifically mentioned, but extends to any exaction of usury exceeding five per cent. per month, by "any con-

tract, contrivance, or device whatever," by which either directly or indirectly the statute is sought to be evaded. In re Berger, 3 L. R. A. (N. S.) 530 (193 Mo. 16, 90 S. W. 759). This construction of the act must be placed upon it if any meaning is given the language in the act, "or by any contract, contrivance, or device whatever." There is a statute fixing the amount of fees to be charged by notaries public for official acts, and the act does not prohibit a bona fide charge and collection of or contract for such fees. The act does not prohibit a transaction wherein there is a bona fide charge of "other fees," or a bona fide charge "by way of commission for advances, discount, or exchange," or a bona fide "purchase of salary or wages," except when it directly or indirectly becomes a part of the usury prohibited. The right to purchase the salary or wages of another, and the right of the latter to sell the same, and the right to make the charges referred to, are not affected by any of the provisions of the act, except as stated. The act never intended to interfere with the right of the citizen to make a bona fide contract for such purchases or sales, or charges, save as a part of an usurious transaction, and there is nothing in the act authorizing a construction that the right to make such contracts is thereby impaired. The legislature has the power to prohibit usury from being charged, directly or indirectly, through any scheme or device. This act deals with such a situation, where the charge exceeds five per cent. per month.

Under the common law it was unlawful for a lender to make any charge for the use of money. In many, if not all, of the States there is a law fixing the rate of interest which may lawfully be charged. The right to do this is a matter which can not now be questioned as being unconstitutional. In the case of Griffith v. Connecticut, 218 U. S. 563 (31 Sup. Ct. 132, 54 L. ed. 1151), Mr. Justice White, on page 569, stated: "It is elementary that the subject of the maximum amount to be charged by persons or corporations subject to the jurisdiction of a State for the use of money loaned within the jurisdiction of the State is one within the police power of such State." In the case of State v. Sherman (Wyo.), 105 Pac. 299, 27 L. R. A. (N. S.) 898, 901, it was said: "It is too late to question the right of the legislature to enact laws regulating the rate of interest that may be legally taken for the loan or forbearance of money, and to prescribe penalties for their violation."

In State ex rel. Ornstein *v.* Cary, 126 Wis. 135 (105 N. W. 792, 11 L. R. A. (N. S.) 174), the court said: "This power has been exercised for the protection of the borrower, upon the ground 'that the lender and the borrower  . .  do not occupy the same relations of equality that parties do in contracting with each other in regard to the loan or sale of other kinds of property, and that the borrower's necessities deprive him of freedom in contracting, and place him at the mercy of the lender.' Prentice, Pol. Powers, p. 43. It is upon this theory that the State is deemed to have enacted usury laws in the exercise of the police power in protection of the public interest, and for the promotion of the general welfare." In this connection, see M., K. & T. Trust Co. *v.* Krumseig, 172 U. S. 351 (19 Sup. Ct. 179, 43 L. ed. 174). The right to fix the maximum rate of interest to be charged being clearly within the police power of the legislature, it has the power to enact such laws as will prevent a violation of the provisions of the laws against usury. The enactment of a law against usury, with no penalty to be suffered by the party violating the law, would be merely advisory and amount to no more than a recommendation to the public. Under the laws of this State the legal rate of interest is 7 per cent. per annum, unless there is a written agreement to pay more, when 8 per cent. may be exacted. It is also provided that when a charge of more than 8 per cent. is provided for in a written contract, only 7 per cent. can be collected; and where a conveyance of property is made as a part of an usurious transaction, the title is voidable at the instance of the one transferring it. If the legislature, in the exercise of the police power, has the right to prevent a recovery of more than 7 per cent. interest where a charge of more than 8 per cent. is provided for in a written contract, and to give to a party undertaking to transfer title to property as a part of an usurious transaction the right to have the same declared void, we see no reason why it can not go further and make penal the violation of the law controlling the interest rate, especially where a crime is committed only when the amount of interest charged exceeds 5 per cent. per month. Interest to the amount of 5 per cent. per month certainly ought to satisfy the greediest of money lenders, and it can not be said that it is an unreasonable exercise of the police power to make criminal the charging of ↑ greater rate. It is to be presumed that the legis-

lature investigated the matter in regard to which it legislated, and found that the existing laws in reference to usury were insufficient to prevent oppression and unreasonable exaction of interest, and that a law making it a crime to exact interest exceeding 5 per cent. per month was necessary to prevent such oppression and exaction. A large discretion is vested in the legislature in deciding what the interests of the public require, and what measures are needed to promote its welfare. In re Berger, supra, it was ruled: "Making the taking of more than 2 per cent. interest a month for the loan or forbearance of money a crime is not beyond the legitimate powers of the legislature." In the case of State ex rel. *v*. Cary, supra, it was ruled: "1. The legislature may restrict the exaction of sums in connection with a loan of money for commissions, examinations, and renewals, without unconstitutionally impairing personal liberty or freedom of contract. 2. Imprisonment may be imposed for violation of a statute forbidding the taking of usury or excessive sums in connection with a loan by way of commissions or compensation for views or appraisals." All property, and indeed all rights of natural persons, or corporations, are subject to the exercise of the police power of the State. The right to contract is not such an absolute right as to render it immune from the reasonable exercise of the police power. *Atlantic Coast Line R. Co.* v. *State, 135 Ga. 545, 557, 558 (69 S. E. 725)*.

The legislature, in the exercise of the police power, having the right to make penal the exaction of interest exceeding 5 per cent. per month, has the right to make provisions in regard to different classes of persons making such exactions of interest, provided no unreasonable distinctions are made in making such provisions and all members of each class are dealt with in the same manner. The act provides: "that regularly licensed pawnbrokers, where personal property is taken in their actual physical possession and stored by them, may charge, in addition to said rate of interest, not exceeding twenty-five cents at the time said property is first taken possession of by them, for the storage of said property." This exception does not make the act violative of the "equal protection" clauses of the State and Federal constitutions. State *v*. Hurlburt, 82 Conn. 232 (72 Atl. 1079) ; Griffith *v*. Connecticut, supra. The pawnbrokers referred to in the language above quoted from the act, who are excepted from the operation of the general

provisions of the act, are such as are "regularly licensed" to do the business of pawnbrokers. The business done by pawnbrokers is different from that done by other persons exacting interest for the use of money. It can not be said that the classification is arbitrary and without legislative discretion.

The act is not class legislation because there is a general law (hereinbefore referred to) defining what constitutes usury, and this act only makes penal the exaction of interest exceeding 5 per cent. per month. Having passed a general law defining usury and providing for forfeitures and penalties for exacting it, the legislature had the further right to denounce a certain class of usurers and to make penal the exaction of interest exceeding 5 per cent. per month. The law making the exaction of more than 8 per cent. interest usury is a general law; and so is the law we are considering, making it penal to increase the exaction to above 5 per cent. per month, a general law. It is not unconstitutional on the ground of being class legislation because the act of the usurers therein referred to in exacting interest in excess of 5 per cent. per month is made penal, whereas the act of an usurer exacting less than this amount but more than 8 per cent. per annum is not penal. The legislature had the right to make this distinction, and the provision of the act in question can not be said to make an arbitrary selection, but it makes a classification upon a reasonable basis of subjects. In re Berger, supra, it was ruled: "Making it a crime to take usurious interest only when it is above a certain amount is not unconstitutional class legislation.". In Griffith v. Connecticut, supra, the ruling made by the Supreme Court of the United States is as follows: "Fixing maximum rates of interest on money loaned within the State by persons subject to its jurisdiction is clearly within the police power of the State, and the details are within legislative discretion if not unreasonably and arbitrarily exercised. Classification, on a reasonable basis of subjects, within the police power, is within legislative discretion, and a reasonable selection which is not merely arbitrary and without real difference does not deny equal protection of the laws within the meaning of the fourteenth amendment. The statute of Connecticut of 1907, limiting interest on loans, is not unconstitutional as denying equal protection of the laws because it excepts loans made by national and State banks and trust companies, and bona fide **mortgages on real**

and personal property: the classification is a reasonable one. The contract clause of the Federal constitution does not give validity to contracts that are properly prohibited by statute." In this connection, see State *v.* Sherman, supra; State *v.* Griffith (Conn.), 74 Atl. 1068.

The act is not subject to the criticism that it only makes guilty of a crime that class of persons who exact interest exceeding 5 per cent. per month "by way of commissions for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees." It makes penal the exaction of such interest by any person, directly or indirectly, "by any contract, or contrivance, or device whatever," and the exaction of such interest is a penal offense though it is done in ways other than those specified in the preceding sentence. The act does not violate any of the provisions of either the State or Federal constitution referred to in the 1st, 2d, and 4th questions propounded, and in headnote 1 (*b*) of this decision; and our answer to these questions is in the negative.

2. The act is not in conflict with art. 1, sec. 4, par. 4 (Civil Code (1910), § 6391), of the constitution of this State, providing: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such consent," because, at the time it was passed there was a general law fixing the maximum rate of interest that could be charged and providing for a violation of this law, and a general law permitting the sale and assignment of choses in action arising ex contractu. The act does not interfere with a sale and assignment of any chose in action, except as hereinbefore shown. The law fixing the maximum rate of interest that can be lawfully charged is a general law. It is not a good objection to it that it makes penal the exaction of interest exceeding 5 per cent. per month, when there was in existence a general law making the charging of more than 8 per cent. interest per annum usury, and providing forfeitures and civil penalties for a violation of it. The act we are passing on, while it deals with a certain class of usurers, is a general law. As far as concerns this

class, it has general operation throughout the State, and has application to no limited territory, and applies to all persons in the State who violate it. The fact that there are certain usurers to whom it does not apply does not make the act a special law. The legislature had the right to fix the amount of usury the exaction of which would constitute a crime, and to leave in force an existing general law providing that the exaction of a less amount, but more than 8 per cent. per annum, would be usury and subject the offender to certain forfeitures and civil penalties, but not to a criminal prosecution. In re Berger, and State *v.* Sherman, supra. The answer to the 3d question propounded is in the negative.

3. The act does not refer to more than one subject-matter, and does not contain matter different from that expressed in its title; and therefore does not violate art. 3, sec. 7, par. 8 (Civil Code (1910), § 6437), providing: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." The charges and sales referred to in the 5th question copied in the statement of facts are not prohibited by the act, save where they are connected with a loan and directly or indirectly constitute all or a part of a charge for the loan of money, or forbearance to enforce the collection of money, in excess of five per cent. per annum. The 5th question propounded is answered in the negative.

*Beck, J., absent. The other Justices concur.*