## TOLLISON *v.* GEORGE, marshal.

1. No one of  sections 1, 8, 12, 13, or 17 of the act approved August 17, 1920, to license and regulate the business of making loans, etc. (Acts 1920, p. 215), a violation of the provisions of which sections is declared to be a misdemeanor in another section of the act, covers the transaction charged as a crime in the affidavit upon which the warrant for the arrest of the applicant for the writ of habeas corpus was issued.
2. Whether section 20 of that act renders it void, or is in itself void because it contains matter different from what is expressed in the title of the act, it is unnecessary to decide, inasmuch as a failure upon the part of any one to observe the regulations of that section is not made penal and constitutes no crime.
3. The warrant under which the prisoner was arrested was based upon an affidavit setting forth certain acts of the accused, which were in themselves not obnoxious to the statute with a violation of which the accused was charged. The warrant, therefore, was void; and the applicant for the writ of habeas corpus should have been discharged.

No. 2902.    JUNE 15, 1922.

Habeas corpus.    Before Judge Humphries.    Fulton superior court.    October 29, 1921.

*R. R. Jackson* and *John F. Echols,* for plaintiff.

*William F. Buchanan,* for defendant.

BECK, P. J.   The plaintiff in error in this case was arrested by the defendant in error upon a warrant issued by one of the judges of the municipal court of Atlanta, which was based upon an affidavit made by one Adams, wherein the affiant deposed that one Duke made an application in writing " to sell to O. L. Tollison

[plaintiff in error] an account" due the applicant for wages or salary already earned; and it is recited in the application that in order to induce Tollison to purchase said account it was represented and warranted that the applicant was 21 years of age, that the account was due and unpaid, etc., and that the transaction was an absolute and unconditional sale, and not a loan or advance of money, nor a discount, nor was the applicant a debtor to the purchaser; that he agreed to take $10 for said account, and authorized the purchaser to sign receipts, acquittances, etc. It is also charged in the affidavit that Duke at the same time executed to Tollison a bill of sale and assignment in writing, which, in substance, recited that in consideration of the sum of $10 he did sell, transfer, and assign to Tollison his account for salary or wages earned during the month of October, 1921, amounting to $11, due by one Brockman, and Brockman was directed to pay over to Tollison the amount of the account. It is further recited in the affidavit that this is an absolute and unconditional sale of the account, etc., as recited before in the application. It is also charged in the affidavit that Tollison "had not made an application to the State Bank Examiner of said State, as provided by law of said act [act approved August 17, 1920, Georgia Laws 1920, p. 215] ; neither had said Tollison made and executed a bond payable to the State Bank Examiner of said State and had the same approved by the State Bank Examiner of said State, as provided for in said act; neither had the said O. L. Tollison obtained a license from said State Bank Examiner to make loans, secured or unsecured, as provided for under the provisions of said act. Deponent further says that said O. L. Tollison did not comply with the provisions of section 20 of said act as to serving J. W. Brockman, the stakeholder named in said writings, with a verified copy of the bill of sale and assignment hereinbefore set out, but that said Tollison served said Brockman with a notice" of the assignment. On October 22, 1921, plaintiff in error brought his petition for habeas corpus against J. M. George, marshal of the municipal court of Atlanta, the officer who made the arrest under the warrant referred to. Petitioner alleged that he was, at the time of bringing the petition for habeas corpus, in the custody of the marshal; and contended, that, under the charges set out in the affidavit upon which the warrant was based, no crime was charged

against petitioner for the violation of any criminal law of this State, and that the custody of the petitioner under the warrant is illegal, and that he is being deprived of his liberty, contrary to law, etc. The respondent made answer to the petition, denying that the arrest was illegal and that the custody by the marshal of petitioner is illegal. When the case was heard before the judge of the superior court the petition was refused and the petitioner remanded to the custody. Whereupon petitioner sued out this writ of error.

The affidavit which was the basis of the warrant under which the plaintiff in error was arrested does not charge the commission of a crime, and shows upon its face that the acts with which the defendant is charged are not a violation of any criminal statute of this State. Let it be observed that the affidavit does not merely charge the commission of a stated crime or misdemeanor in general terms, but sets forth specifically and in detail the transaction alleged to be a violation of a criminal statute, and specifically states the statute alleged to have been offended. The statute with the violation of which the accused is charged is one relating to the regulation of the loan business, and is entitled, " An act to license and regulate the business of making loans in sums of $300.00, or less, secured or unsecured, at a greater rate of interest than eight (8) per centum per annum, prescribing the rate of interest and charge therefor, and penalties for the violation thereof; regulating the assigment of wages or salaries, earned or to be earned, when taken as security for any such loan, and for other purposes." This statute has 21 sections. Sections 1 to 17, inclusive, deal with the business of making loans and the regulation of that business and with the regulation of " assignment of wages or salaries, earned or to be earned, when taken as security for any such loan." There is nothing in any of the sections from 1 to 17 indicating an intention upon the part of the lawmakers to make penal the absolute sale of choses in action and the making of a bona fide contract for such purchase or sale. So far as appears from the transaction which was reduced to writing and set forth in the affidavit under consideration, the transaction was not a loan, nor a partial assignment of an account, but was a absolute and unconditional sale of the applicant's salary or wages earned up to a certain date. It is not necessary to repeat the language of the

contract and the application made by Duke in order to effect the sale. The fact that it was a sale appears upon a most cursory reading of the application. Section 18 of the act of August 17, 1920, under consideration, is the penal section of the act, and declares that any person violating the provisions of sections 1, 8, 12, 13, or 17 of the act shall be guilty of a misdemeanor, and shall be punished as provided in that section. But, as decided above, the acts with which the accused in this case was charged fall within none of these specified sections nor any of the provisions of the act preceding sections 18. Section 19 of the act specifies certain persons and corporations exempted from the operation of the act. Questions similar to that presented here have been decided by this court and by the Georgia Court of Appeals, in cases where statutes containing language similar to that under consideration and transactions like that involved in the present case were considered and discussed. In the case of *Jackson* v. *State, 5 Ga. App.* 177 (62 S. E. 726), it was said: "1. The act of the General Assembly approved August 15, 1908 (Acts 1908, p. 83), makes it a misdemeanor ' to reserve, charge, or take for any loan or advance of money . . any rate of interest greater than five per cent. per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, or contrivance, or device whatever.' The sole purpose of the act is to make it penal ' to reserve, charge, or take ' interest for the use of money in excess of five per cent. per month, under any contract where the relation of debtor and creditor is created or survives. The absolute sale of property is not included within the terms of the act. 2. The facts set out in the accusation showing a real, absolute, and unconditional sale and transfer of personal property, where no money was loaned or advanced, where the purchase-price was in fact paid, and no interest was ' reserved, charged, or taken,' the trial court erred in not sustaining the demurrer and quashing the accusation, and the judge of the superior court erred in not granting the writ of certiorari." And in the case of *Central of Ga. Ry. Co.* v. *King,* 137 *Ga.* 369 (73 S. E. 632), it was held: "A writing executed by an employee of a railway company recited that ' I hereby sell, transfer, and assign to King Bros. & Co., doing business in the city of Atlanta, Georgia, my account for salary or wages already

earned by me during the month of May, 1910, and amounting to $27.75, and due me by Central of Georgia Railway Co. I hereby direct my said employer to pay to King Bros. & Co. said account amounting to $27.75. This is an absolute and unconditional sale of said account, and is not a loan or advance of money, and is not a discount; I am not a debtor to the purchaser; this is an original transaction, and is not a renewal or extension of any kind.' *Held,* that the instrument is an assignment of the legal title to the particular money therein specified, and is not a partial assignment of a general fund belonging to the assignor in the hands of the railway company, and therefore is not governed by the law as to equitable assignments." See also the case of *King* v. *State,* 136 *Ga.* 709 (71 S. E. 1093), wherein the court said: "1. The act of 1908, p. 83) embodied in Civil Code (1910), §§ 3444, 3445, providing, among other things, that it shall be a crime ' to reserve, charge, or take, for any loan or advance of money or forbearance to enforce the collection of any sum of money, any rate of interest greater than five per cent. per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, or contrivance, or device whatever,' does not make unlawful a transaction wherein there is a charge by way of commission for advances, discount, exchange, or fees, or the purchase of salary or wages, save where connected with a loan and directly or indirectly constituting all or a part of a reservation, charge, or taking, for a loan or advance of money, or forbearance to enforce the collection of a sum of money, a rate of interest greater than 5 per cent. per month. 2. The act in question does not prohibit the sale and assignment of ' choses in action arising ex contractu.' " And in the case of *Ison Co.* v. *Atlantic Coast Line Railroad Co.,* 17 *Ga. App.* 459 (87 S. E. 754), the Court of Appeals said: " The act of the General Assembly approved August 15, 1908 (Acts 1908, p. 83), does not prohibit the sale and assignment of choses in action arising ex contractu. *King* v. *State,* 136 *Ga.* 709, 710 (71 S. E. 1093). The right to purchase the salary or wages of another, the right of the latter to sell the same, and the right to charge a greater rate of discount on such purchases than 5 per cent., are not affected by this act. ' The act never intended to interfere with the right of the citizen to make a bona fide contract for such pur-

chases or sale, or charges, save as a part of an usurious transaction, and there is nothing in the act authorizing a construction that the right to make such contracts is thereby impaired.'" And in *King v. Cantrell,* 4 *Ga. App.* 263 (61 S. E. 144), it was said: " The contention of the plaintiffs in error, that they were entitled to go to the jury on the question whether the transaction between them and Cantrell was a loan of money or a purchase of wages, is not well founded. The papers speak for themselves; and they are not to be contradicted by parol testimony, in the absence of fraud, accident, or mistake."

But there is one other section of the act of 1920 which must be considered; and that is section 20, the last remaining section of the act except the section containing the repealing clause. It is charged in the affidavit that the applicant for the writ of habeas corpus did not comply with the provisions of section 20 of the act by making service of the bill of sale, required in the act, upon the proper party. There is language in section 20 which seems to indicate that the purchase of wages or salary comes within the purview of the act; and the act is attacked as unconstitutional on the ground that section 20 contains matter different from what is expressed in the title of the act. Whether the inclusion of the provisions of section 20, relating to the sale and purchase of wages or salary, renders the act obnoxious to the constitution on the ground specified need not be considered; for the penal section of the act, as we have pointed out above, section 18, makes it a crime only to violate certain of the preceding sections of the act, and has no relation to section 20. Consequently, a failure to comply with the requirements of section 20 affords no basis for prosecution or the issuance of a warrant to apprehend any person for non-compliance with its requirements. It is nowhere alleged in the affidavit that the transaction between the applicant for the loan and the accused was merely colorable, that it was only a pretended sale, but in fact an assignment of the choses in action for a loan; but the papers constituting the transaction are left to speak for themselves, and show, as said above, an absolute sale.

We therefore conclude that on the face of the affidavit itself it is made to appear that there was no violation by the accused, who is in this case the applicant for the writ of habeas corpus, of any criminal statute. And it appearing from the affidavit that

no crime is charged, the warrant based upon such an affidavit is void. Penal Code, § 904; *Thorpe* v. *Wray,* 68 *Ga.* 359. That being true, the petitioner was illegally detained, and his prayer for the writ of habeas corpus should have been granted. *McDonald* v. *Sowell,* 129 *Ga.* 242 (58 S. E. 860, 12 Ann. Cas. 701). Therefore the judgment of the court below, denying the writ and remanding the prisoner to the custody of the sheriff, is reversed.

*Judgment reversed. All the Justices concur.*