## JACKSON *et al.* v. JOHNSON.

1. A petition praying to cancel an assignment of wages, and to enjoin the assignee from serving notices of such assignment on the plaintiff's employer, etc., referring to the transaction as a sale of the wages, was demurrable as failing to allege that the assignment was taken to secure any loan or advance of money at a usurious rate of interest.

2. There being no distinct allegation of full repayment of the actual money received, with legal interest, the petition for cancellation was demurrable as failing to state a cause of action plainly, fully, and distinctly. RUSSELL, C. J., dissents.

No. 3791. JANUARY 15, 1924.

Equitable petition. Before Judge Humphries. Fulton superior court. May 7, 1923.

*R. R. Jackson,* for plaintiffs in error.

*W. I. Heyward* and *E. M. Habersham,* contra.

HINES, J.   In January, 1919, the exact day of the month not being stated, the plaintiff executed to the defendant, Jackson, an assignment of wages due him by the Southern Railway Company, the same amounting to $30.  He received no money on this assignment, the same being in renewal of a previous assignment for the same amount, made in December, 1918, which was then and there destroyed.  At the time of this renewal assignment he paid Jackson $5.  This transaction was repeated each month for five succeeding months, the plaintiff receiving no money on his six assignments of his wages, consisting of the one in January, 1919, and the five succeeding monthly assignments.  Petitioner alleged "that the amount of the assignments mentioned aforesaid was the sum of thirty dollars, which was the amount of the first assignment of wages that he sold to the said Jackson about 4 years ago, and that he has been ever since that time renewing the old assignment and paying the sum of five dollars for the new assignments, and that for the first one he only got the sum of $25."  Plaintiff further alleged "that the facts aforesaid show that he paid Jackson the full amount of the money that he got on the sale of his wages; and as the sale of his wages and the giving of the assignments as mentioned above was for the sole purpose of evading the usury laws of Georgia, the said Jackson is not entitled to any interest on the said thirty dollars. . .   The exact amount of money paid as mentioned aforesaid amounts to the sum of $25; and therefore the plaintiff owes the said Jackson nothing."  The above allegations appear in the first paragraph of the plaintiff's petition.   In the second paragraph thereof the plaintiff "alleges that the last assignment he made was on or about the —— day of latter part of Nov. or Dec., 1921, & Mar. to Janr. 1, 1922, for what was then due him as set forth aforesaid, but that the said Jackson has served notice upon the Southern Railway Co. that he has assignments or assignment for wages that became due on or about the —— day of August, 1922, & Sept. 1922, or on wages made that became due in Dec. 1922, & Jany. 1923," said notice being "given on or about the —— day of ———, when the fact is that no assignment was ever made to the said Jackson for any wages due later than Janr. day of # 1922, and said assignment could not

hold up any wages due him for the month except the one for which the same was made, and not for wages earned many months thereafter." In paragraph 3 plaintiff alleges "that the said Jackson will not bring suit on said assignment, for he knows that the plaintiff has a good and valid defense to the same, as has been fully set forth aforesaid; but by giving the notice of assignment to the Southern Railway Co., he is in hopes that the said railway will discharge plaintiff or make him pay the said assignment, for he well knows that if one loses his job now, he may not for many months get another, for there's at this time more men wanting jobs than there are jobs." In paragraph 5 he alleges that he has no adequate remedy, as his damages will be irreparable. Plaintiff, in his equitable petition against Jackson and the Southern Railway Company, in which he alleged the above facts, prayed that his last assignment of his wages to Jackson be canceled, that Jackson be enjoined from serving any more notices of said assignment of wages on the Southern Railway Company, and that said company be enjoined from paying to Jackson any wages due to plaintiff upon any assignment of wages by him to Jackson.

The defendant demurred generally to the petition, on the grounds: (1) that it sets forth no cause of action, and does not authorize the relief prayed; (2) that there is no equity in the petition, and no right shown to the equitable relief prayed; (3) that the petition does not plainly, fully and distinctly set forth a cause of action; and (4) that plaintiff's case is not set forth in orderly and distinct paragraphs. The defendant demurred specially on various grounds which need not be stated, under the disposition which we make of this case. The trial judge overruled all grounds of the general and special demurrers, except the special demurrer to paragraph 4 of the petition, which was stricken, with ten days leave to amend. The defendant, Jackson, excepts to the said judgment overruling his demurrers.

1. The petition not alleging that the defendant, Jackson, made any loan or advance of money to the plaintiff, and not alleging that the defendant took an assignment of the wages of the plaintiff to secure any loan or advance of money at a usurious rate of interest, but the petition, on the contrary, referring to the transaction as a sale of his wages to the defendant, the case does not come within section 3444 of the Civil Code, the allegation, that "the sale

of his wages and the giving of the assignments as mentioned above was for the sole purpose of evading the usury laws of Georgia," not being inconsistent with a sale of wages. This section of the code does not make unlawful the sale and assignment of wages, save when connected with a loan at usurious rates. *King* v. *State,* 136 *Ga.* 709 (71 S. E. 1093); *King* v. *Cantrell,* 4 *Ga. App.* 263 (61 S. E. 144); *Jackson* v. *State,* 5 *Ga. App.* 177 (62 S. E. 726); *Ison Co.* v. *A. C. L. R. Co.,* 17 *Ga. App.* 459 (87 S. E. 754); *Tollison* v. *George,* 153 *Ga.* 612, 616 (112 S. E. 896).

2. The burden is on the plaintiff to plainly, fully, and distinctly set forth his cause of action. Civil Code (1910), § 5538. It was doubtless his purpose to make a case for cancellation of a usurious assignment of his wages, by alleging the payment to the lender of the actual money he received, with legal interest, and the oppressive use of the instrument by the lender after such payment. He cannot cancel such assignment without payment of the actual money received, with lawful interest. *Patterson* v. *Moore,* 146 *Ga.* 364 (91 S. E. 116). His allegations must clearly show that such payment in full has been made. *King* v. *Moore,* 147 *Ga.* 43 (92 S. E. 757). Failing to plainly, fully, and distinctly set out a cause of action entitling him to cancellation, the trial judge should have sustained this ground of demurrer; and we reverse his judgment on this ground, with direction that, if the plaintiff does not amend to meet it before the remittitur from this court is made the judgment of the lower court, this ground of demurrer be sustained and the case dismissed.

*Judgment reversed, with direction. All the Justices concur, except*

RUSSELL, C. J., dissenting. I regret that I cannot agree to the judgment of reversal. I think that the ruling of the judge in the trial court upon the demurrer was correct. It must be borne in mind that the lower court only overruled a general demurrer, and a general demurrer is insufficient to reach mere structural defects in pleadings. It is necessary for a petition to be so fatally defective—so completely dead—that even amendment will not revive or resuscitate it, before it can be said that it is so defective that it cannot withstand a general demurrer. *Ellison* v. *Georgia Railroad Co.,* 87 *Ga.* 691 (13 S. E. 809); *City of Atlanta* v. *Church,* 83 *Ga.* 448 (10 S. E. 231). Much of the petition to which reference is

made in the opinion of the majority should, as I think, be treated as mere history of the case; and this, as well as other portions of the declaration, might be stricken on appropriate special demurrers. But regardless of any question of usury or as to the validity of any of the assignments alleged, the statement of the fact that the petitioner had paid, within three or four years, over $300 upon the original obligation on which he had received only $25 and that the respondent was about to cause him to lose his position from which he derived his livelihood by presenting assignments of wages to his employer which he in fact had never executed, especially in view of the allegation that public conditions were such as that he probably could not be able to obtain other employment in the event he was discharged, afforded, in my opinion, good grounds for the intervention of equity and the rendition of the judgment of the lower court. Many portions of the petition are vague and confusing; but standing out above a mass of irrelevant allegations there is in three of the latter paragraphs a clear case of attempted injury for which the law does not provide an adequate remedy. The trial judge did not construe the petition as it is construed in the opinion of the majority, nor confine it entirely, as do my honorable colleagues, to the setting aside of an assignment of wages for the reason that it is usurious. He doubtless construed it, as I do, as an effort on the part of the petitioner to show that there was not only no consideration for any assignment which Jackson may have in his possession, because he has far overpaid him any amounts of money he may have ever borrowed before the execution of the last assignment, but also as an effort to prevent Jackson from compelling him to pay assignments of which the railroad company had been given notice, and which he says that he never executed at any time or for any purpose. It is true that the petitioner alleges in the first paragraph that in January, 1919, he executed to Jackson an assignment for about $30 in wages then earned and due him by the Southern Railway Company, but says that he did not receive a cent at the time, because this assignment was a mere renewal of a former assignment for the sum of $30, though he paid Jackson $5 then and there. He then recites that for five consecutive renewals he paid in all the sum of $25, not receiving any money at any time. If that was all that was paid, I confess that the judgment of the majority would be correct. But

in the first paragraph it is further alleged that on the first assignment of wages that he sold to Jackson four years ago he has been ever since paying the sum of $5 per month for renewal assignments, although he only received $25 at the outset. This would amount to a sum of about $240 paid for a consideration of $25. Fully conceding the principle stated in the opinion of the majority that wages may be sold and assigned for any consideration, no matter how small, that may be agreed upon between the contracting parties, would not a court or jury be authorized, upon proof of the facts stated, to infer that there really never was any real sale or assignment of wages, but that the written contract was merely a "device" or subterfuge to evade the laws against usury which is so strongly condemned in the Code? But even if that portion of the petition be subject to demurrer, I think the trial judge correctly overruled the general demurrer to the petition as a whole, because in paragraph two of the petition it is positively alleged that Jackson has served notice upon the Southern Railway Company that he has assignments of wages of the petitioner for August and September, 1922, or on wages that became due in December, 1922, and January, 1923, "when the fact is that no assignment was ever made to said Jackson for any wages due later than January, 1922." Certainly if that allegation is true, taken in connection with the fact that it is alleged that Jackson will not bring suit upon the assignments because he knows the petitioner has a valid defense and that his purpose in giving the notice of the assignments to the railway company is the hope that the railway company will either discharge the plaintiff or make him pay the assignments, it seems to me that these facts set forth such a case as justified the lower court, in the exercise of the discretion of a chancellor, to take charge of all phases of the disagreement and to require Jackson to bring his assignments into court, and to enjoin the Southern Railway Company from paying any wages of the petitioner under any of the assignments until the jury should ascertain the real truth of the case.