### 1416. JACKSON *v.* THE STATE.

1. The act of the General Assembly approved August 15, 1908 (Acts 1908, p. 83), makes it a misdemeanor "to reserve, charge, or take for any loan or advance of money . . any rate of interest greater than five per cent per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, or contrivance, or device whatever." The sole purpose of the act is to make it penal "to reserve, charge, or take" interest for the use of money in excess of five per

12

cent. per month, under any contract where the relation of debtor and creditor is created or survives. The absolute sale of property is not included within the terms of the act.

2. The facts set out in the accusation showing a real, absolute, and unconditional sale and transfer of personal property, where no money was loaned or advanced, where the purchase-price was in fact paid, and no interest was "reserved, charged, or taken," the trial court erred in not sustaining the demurrer and quashing the accusation, and the judge of the superior court erred in not granting the writ of certiorari.

Certiorari, from Fulton superior court—Judge Ellis. September 16, 1908.

Argued October 27,—Decided November 10, 1908.

*Rosser & Brandon, J. D. Kilpatrick, R. B. Blackburn,* for plaintiff in error.  *C. D. Hill, solicitor-general, Lowry Arnold, solicitor, D. K. Johnston,* contra.

HILL, C. J., Jackson was tried and convicted in the criminal court of Atlanta for a violation of the act approved August 15, 1908 (Acts 1908, p. 83). He thereupon presented his petition for certiorari to the judge of the superior court of Fulton county. The writ was refused, and the judgment refusing the writ of certiorari is brought to this court for review. The act in question is entitled "An act to make it a misdemeanor to charge any rate of interest greater than five per cent. per month, either directly or indirectly, and for other purposes." In the body of the act it is provided, that "It shall be a misdemeanor . . . for any person . . to reserve, charge, or take for any loan or advance of money . . any rate of interest greater than five per cent. per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, or contrivance, or device whatever."

The first count in the accusation sets out, in substance, the following, as constituting a violation of the statute: On August 19, 1908, J. D. Lindsay made a written application to sell to Jackson an account due Lindsay by the Southern Railway Company, for wages or salary at that time due and already earned by Lindsay in the capacity of coal-crane engineer. In this application Lindsay warranted, in order to induce Jackson to purchase the account, (1) that he was employed by the Southern Railway Company as a coal-crane engineer during the month of July, 1908; (2) that

while so employed he earned as salary $58.06; (3) that there were no offsets or counter-claims against this salary or wages account; (4) that there were no orders, drafts, garnishments, or judgments outstanding in any way affecting the account; and (5) that the account was just, true, and unpaid, and had not theretofore been sold or transferred. In the application it was alleged by Lindsay, (1) that the transaction between himself and Jackson was an absolute and unconditional sale and not a loan or advance of money, nor a discount; (2) that he, Lindsay, the seller of said account, was not a debtor to Jackson, the purchaser of the account; (3) that the transaction was an original one and was not a renewal or an extension of any kind. It was also agreed by Lindsay in his application, (1) that he would take, as the purchase-price for the account offered for sale, $52.70; (2) that he authorized Lindsay, the purchaser of the account, in his name and stead and as his attorney in fact, to collect the account and to sign any and all checks, receipts, and acquittances necessary and proper to be signed in order to collect the account. Upon an acceptance, in writing, by Jackson of Lindsay's proposition, Lindsay made to Jackson a written transfer of the account referred to, in substance as follows: "In consideration of the sum of $52.70 cash in hand paid, the receipt of which is hereby acknowledged, I hereby sell, transfer, and assign to R. R. Jackson . . my account for salary or wages, already by me earned, and amounting to $58.06, and due me by the Southern Railway Company. . . This is an absolute and unconditional sale of the account, and is not a loan or advance of money, and is not a discount. I am not a debtor to the purchaser. This is an original transaction, and not a renewal or extension of any kind." (Here follow statements and warranties similar to those contained in the foregoing application made by Lindsay to Jackson.) After consummating the above contract, Jackson on August 21, 1908, in Fulton county, presented to the Southern Railway Company the transfer and assignment above stated, and received from that company $58.06, being the amount due by it to Lindsay for wages earned during the month of July, 1908. The second count of the accusation is in all respects similar in its allegations to the first count, except that in this count it is alleged that Lindsay sold to Jackson a promissory note made by one A. S. Bond, dated August 18, 1908, and paya-

ble on or before August 25, 1908, to Lindsay, ·the note being in the usual form, with interest from maturity at eight per cent., including ten per cent. attorney's fees if collected by law or through an attorney.   It is alleged that the consideration which Jackson paid to Lindsay for this note was $8 in cash, and that Jackson collected from the maker of the note $10 in payment thereof.

The defendant filed a demurrer to both counts of the accusation, on the ground that no offense was charged therein, and that the acts of the defendant as therein alleged were not within the prohibition of the statute upon which the accusation was framed. Other grounds of the demurrer make an attack upon the constitutionality of the act in question, for various reasons.   The view that we take of the case makes it unnecessary to set out these objections.   The court overruled the demurrer, and the defendant was thereupon tried by the presiding judge, without the intervention of a jury, on an agreed statement of facts; and found guilty on both counts.   In the agreed statement of facts it is expressly stipulated that the allegations set out in the first and second counts of the accusation speak the truth of the transactions.   The controlling question presented for the decision of this court is as to the correctness of the judgment overruling the demurrer.

The allegations of the accusation, in the first count, tersely stated, show that the defendant bought from the prosecutor an account for wages which had been earned by the prosecutor as an employee of the Southern Railway Company, the purchase being for the stipulated price which was paid in cash to the prosecutor as the seller of the account, and that in consideration of the payment of this sum the account was duly transferred in writing by the prosecutor to the defendant.   The allegations in the second count show an exactly similar transaction, except that the subject-matter of the sale therein described was a promissory note payable to the prosecutor.   Both the account and the note were purchased by the defendant for sums less than their face value by more than five per cent.   It will be seen that there is no allegation that either transaction was other than the facts as set out purport.   It is not alleged that either transaction was a pretense or subterfuge to cover usury; and therefore, for the purpose of deciding the questions made by the demurrer, we treat the transactions described in the accusation as genuine transfers of the account, and the note

as made by the prosecutor to the defendant in good faith and based upon a valuable consideration. Does the act of 1908 make criminal bona fide transfers of accounts for wages due and earned at the date of the transfer, or the transfer of promissory notes? In construing the act in question, the caption or title thereof illustrates the legislative intent. United States v. Palmer, 3 Wheat. 631 (4 L. ed. 471); *Etowah Milling Co.* v. *Crenshaw,* 116 *Ga.* 408 (42 S. E. 709). The caption of the act is as follows: "To be entitled an act to make it a misdemeanor to charge any rate of interest greater than five per cent. per month, either directly or indirectly, and for other purposes." There is certainly no intimation in the language of this caption of a legislative intent to make penal the purchase of personal property or choses in action under any circumstances or at any price, no matter how low. The misdemeanor indicated by the title of the act is the reserving, charging, or taking of usury or excessive interest for money loaned or advanced, at a greater sum than five per cent. per month. In a bona fide sale and transfer of property for a cash consideration, there is no interest or usury, and the relation of debtor and creditor is not created and does not survive the transaction. Only when the relation of debtor and creditor exists can the question of interest, excessive or otherwise, arise.

The use of the general words "and for other purposes" does not authorize the introduction in the body of the act of a new subject-matter. The title of an act should state in a brief and comprehensive form the purposes of the act and the subject-matter to be dealt with, and the words "and for other purposes," contained in the title, relate only to those provisions in the body of the act which are germane and pertinent to the general subject-matter. *Banks* v. *State,* 124 *Ga.* 16 (52 S. E. 74, 2 L. R. A. (N. S.) 1007). In the apt and forceful language of the learned counsel for the plaintiff in error, "the prohibition of sale, whether of personal property or choses in action, is not germane in the sense in which that word is used in decisions on the general subject-matter of prohibition of excessive interest. There is no possible relationship between sales and the taking of interest, moderate or excessive. The very mention of the one excludes the other. In legal geography, the boundary of the one does not overlap that of the other." The words "and for other purposes," which occur in the

title of the legislative act, do not constitute a drag-net cast by the legislature for the purpose of catching all kinds of fish, but only a precautionary net for the purpose of holding more securely the one fish caught. To make this matter perfectly plain, the constitution of our State declares that "no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." Civil Code, § 5771. Giving these words their widest legal significance,. therefore, there is in the title of the act in question but one general subject-matter, to wit, the making penal the taking of excessive interest, directly or indirectly, or by any contrivance, device, or subterfuge whatsoever. The body of the act makes it a. misdemeanor for "any person . . . to reserve, charge, or take for any loan or advance of money . . any rate of interest greater than five per cent. per month, either directly or indirectly, by way of commission for advances, discount, exchange, purchase of salary or wages, by notarial or other fees, or by any contract, contrivance, or device whatever." Now, the use of the words, "the purchase of salary or wages," in the body of this act, under which the accusation was evidently framed, was not intended to prohibit the purchase of salary or wages legally capable of being sold, however low might be the price paid therefor. There is nothing whatever in the allegations of the accusation indicating that Jackson made to the prosecutor any loan or advance of money, or that the transaction described in the accusation was any subterfuge for what was in reality a loan of money, or that the transaction therein described was any contrivance or device to cover usury. Neither is there in any of the allegations of the accusation any suggestion that such was in fact the case. The only construction which can be legitimately placed upon the allegations set out in the accusation as descriptive of the transactions between the defendant and the prosecutor is that there was a bona fide sale by the prosecutor to the defendant of his property for a valuable consideration. The prosecutor, as the seller of the account and the note, parted absolutely with the title, for a money consideration which he then and there received, without any condition and without any obligation to repay. It is perfectly clear that the legislature intended only to prohibit and to make penal the taking of usurious interest greater than five per cent. per month, by whatever means such

usury or excessive interest might be taken, whether "by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees." It is only when these things, otherwise legitimate and valid, are used as devices for the exaction of usury beyond this fixed amount that they fall within the prohibition of the act. The legislature never intended to revolutionize the general law on the subject of sales of property, or the right of every man to sell what he owned for any price he desired, or to prohibit any man from buying any sort of property for any price for which he could purchase. "The policy of our law is against restrictions upon the alienation of property. It is woven in the warp and woof of all of our laws, concerning the disposition of property, that an adult shall be unrestricted in the disposition of his property." *Singleton* v. *Close,* 130 *Ga.* 720 (61 S. E. 724). And Justice Speer, in the case of *Lamar* v. *Jennings,* 69 *Ga.* 392, declares that any "restriction upon the free alienation of property by the owner is contrary to public policy." The assignment of his earned wages by the prosecutor to the defendant, described in the first count of the accusation, has been expressly authorized by the act of 1904 (Acts 1904, p. 79), and the transfer of the note described in the second count of the accusation is fully within the terms of § 3077 of the Civil Code, which provides "that all choses in action arising upon contract may be assigned so as to vest the title in the assignee." But we deem it profitless to extend this discussion. The whole matter may be summed up in the statement that it never entered into the mind of the legislature to conceive that the statute which has for its sole purpose to make it a misdemeanor to reserve, charge, or take for any loan or advance of money a rate of interest greater than five per cent. per month, either directly or indirectly, under pretense or guise of a purchase of salary or wages, or by any contract, contrivance, subterfuge, or device whatever, could possibly be construed as restricting the fundamental right of the citizen to make, by sale or transfer, free disposition of his property. For these reasons we think that the demurrer should have been sustained and the accusation quashed by the trial court; and the writ of certiorari should have been granted. This decision makes it unnecessary to certify to the Supreme Court the constitutional questions made in the record.

*Judgment reversed.*