A96A0787, A96A0788. FIRST ALLIANCE BANK v. WESTOVER, INC. et al.; and vice versa.
(474 SE2d 717)

BLACKBURN, Judge.

We granted this interlocutory appeal to address the denial of motions for partial summary judgment by each side on the sole issue before us, that being whether a discount received by one of two joint lenders at the time it bought the interest of the other lender shall be included in calculating interest for the purpose of evaluating a usury

claim pursuant to OCGA § 7-4-18.

On October 27, 1988, Cobb Federal Savings Bank (Cobb Federal) loaned Westover, Inc. (Westover) $2.7 million to develop a subdivision. The agreement provided that Westover would pay Cobb Federal a loan origination fee of $310,000 with $20,000 to be paid at closing. Shortly thereafter, a 15 percent participation interest in the Primary Loan was sold to United Federal Savings & Loan (United Federal). One year later, Cobb Federal renewed the Primary Loan with the total principal amount being increased to $3.3 million. Thereafter, Cobb Federal sold a 30 percent participation interest in the Primary Loan to First People's Bank of Cobb County, the predecessor to First Alliance Bank (First Alliance).

In the summer of 1990, First Alliance made a separate loan to Don McAfee in the amount of $170,462.50 (Individual Loan) to assist in paying Cobb Federal amounts owed on the Primary Loan. The Individual Loan was secured by Don and Beverly McAfee's 12,500 shares of Cobb Federal stock as well as junior liens on the same collateral securing the Primary Loan.

In the fall of 1990, Cobb Federal was experiencing serious business difficulties. The Office of Thrift Supervision ("OTS") audited Cobb Federal and placed stringent requirements on how it should manage the Primary Loan. Before agreeing to a renewal, the OTS required additional security as well as the personal guaranty of both Don and Beverly McAfee. In the fall of 1991, the Resolution Trust Corporation (RTC) was appointed as receiver for Cobb Federal. It reluctantly renewed the Primary Loan and then placed it under the control of a contractor hired pursuant to a Standard Asset and Management Agreement (SAMDA). First Alliance, Westover and the McAfees all feared that this transfer to a SAMDA contractor signalled the RTC's intent to liquidate the Primary Loan. Shortly thereafter, First Alliance purchased Cobb Federal's controlling interest as well as United Federal's participation interest in the Primary Loan, receiving a 25 percent discount. First Alliance's version of how it came to acquire the Primary Loan from the RTC differs markedly from the version offered by Westover and the McAfees. For appellate review of the denial of the motions for partial summary judgment, the facts will be viewed in a light most favorable to the parties resisting each of such motions.

On June 18, 1992, a closing was held between Westover and First Alliance whereby Westover executed a modification of the Primary Loan agreement it originally entered in 1988. Westover also executed a renewal promissory note for $1,650,462.50 which consolidated the $1.48 million principal outstanding on the Primary Loan and the $170,462.50 principal outstanding on Don McAfee's Individual Loan. At the time of the closing, Westover and the McAfees claim

that First Alliance affirmatively misrepresented that, in purchasing the Primary Loan, it had been unable to secure a discount and attempted to hide that fact by virtue of its closing statement and accounting measures. The consolidated loan was satisfied by its maturation date with First Alliance receiving full payment of the principal plus interest.

In March 1993, Westover, Don McAfee and Beverly McAfee (hereinafter collectively known as plaintiffs) filed the underlying suit against First Alliance alleging among other things, breach of fiduciary duty, fraud, and usury. First Alliance filed a counterclaim seeking to collect an allegedly unpaid portion of the origination fee originally owed to its predecessor, Cobb Federal. Both sides filed cross-motions for partial summary judgment on the plaintiffs' usury claim. The plaintiffs' motion also sought summary judgment on First Alliance's counterclaim on the grounds that it too was barred by usury. The trial court denied both motions, finding that the case raised genuine issues of material fact that precluded either party from receiving summary judgment. We granted First Alliance's application for interlocutory review, and the plaintiffs filed a cross-appeal.

### Case No. A96A0787

In Case No. A96A0787, First Alliance appeals the denial of its motion for partial summary judgment. Pursuant to OCGA § 7-4-18 (a), "[a]ny person, company, or corporation who shall reserve, charge, or take for any loan or advance of money . . . any rate of interest greater than 5 percent per month, either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever shall be guilty of a misdemeanor." In a civil context, a lender who has violated the criminal usury statute may collect the principal amount of its usurious loan but forfeits its right to any interest or other fees associated with the loan. *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 273 (392 SE2d 242) (1990).

Georgia has previously addressed whether the discounted sale of a note raises an issue of usury. "Where one buys outright a negotiable promissory note, the transaction is not rendered usurious because the discount upon the note amounts to more than the maximum lawful rate of interest." *Mutual Canning Co. v. DeGuenther*, 23 Ga. App. 746, 747 (99 SE 319) (1919) citing *Campbell v. Morgan*, 111 Ga. 200 (36 SE 621) (1900). See also *Jackson v. State*, 5 Ga. App. 177, 183 (62 SE 726) (1908) (Usury statute should not be construed so as to restrict the free transfer of property between willing parties). The plaintiffs contend that this longstanding Georgia law is inapplicable in the present matter. Rather, they argue that under the facts of this

case, the sale of a discounted note merely served to cloak what was a usurious loan. The plaintiffs argue that " '[i]n determining whether a contract is usurious the substance of the transaction will be critically examined, for the name by which the transaction is called is wholly immaterial where it appears that its foundation was the loan of money.' " *Tribble v. State*, 89 Ga. App. 593, 596 (80 SE2d 711) (1954).

The plaintiffs contend that the modification and the renewal of the Primary Loan that took place in June 1992 in fact constituted a new loan and should be treated as such. Particularly, the plaintiffs argue that First Alliance had agreed to provide them with a new loan to pay off the outstanding loans and that it failed to do so and structured the transaction so that First Alliance would benefit from the discount to the exclusion of the plaintiffs.

The plaintiffs argue that First Alliance merely attempted to cloak a new and usurious loan by structuring the transaction as the modification and renewal of a prior loan. The plaintiffs had full use of the funds disbursed by Cobb Federal when the Primary Loan originated. At the time First Alliance purchased the Primary Loan, its principal value was $1.48 million. The plaintiffs enjoyed full use of that $1.48 million, and it is not usurious for a borrower to pay interest on the full amount that it borrowed. See *Williams v. Powell*, 214 Ga. App. 216, 218 (447 SE2d 45) (1994) (In conducting a usury analysis, "[i]nterest is calculated on the amounts of which the borrower had use").

The primary case cited by the plaintiffs, *Norris*, supra, demonstrates this point. In *Norris*, the note reflected a face amount of $12,310.50. Of that amount, $5,800 was an origination fee which was retained by the lender. The Supreme Court ignored the labels contained within the loan document, determining that while the parties included the $5,800 as principal, it was "clearly a fee paid for the extension of credit" and thus should be considered as interest for purposes of OCGA § 7-4-18. Id. at 272. In *Norris*, usury resulted because the borrower was charged a tremendous sum for money that it was prevented from using. That is not the case here.

The gist of the plaintiffs' complaint is not that First Alliance obtained the Primary Loan at a discount — but rather that First Alliance improperly prevented the plaintiffs from sharing in the benefits derived from that discount. Because the borrower in this transaction was able to enjoy the full amount it borrowed, questions about whether First Alliance misled the plaintiffs as to the discount or breached a duty to the plaintiffs in negotiating with the RTC are not presently before us.

The trial court erred in denying First Alliance's motion for partial summary judgment on the usury claim.

*Case No. A96A0788*

In Case No. A96A0788, plaintiffs appeal the trial court's denial of their motion for partial summary judgment. In light of our analysis in Case No. A96A0787, supra, the trial court properly denied plaintiffs' motion for summary judgment on their claim of usury. Accordingly, we affirm. *Precise v. City of Rossville*, 261 Ga. 210, 211 (403 SE2d 47) (1991) (a judgment that is right for any reason will be affirmed).

In their motion, plaintiffs also sought summary judgment on First Alliance's counterclaim to recover the unpaid loan origination fee assessed by Cobb Federal at the time the Primary Loan was originally made. The right to collect this fee was transferred to First Alliance when it purchased the Primary Loan from the RTC. The plaintiffs do not assert that anything was improper with the fee at the time it was assessed by Cobb Federal. Rather, the plaintiffs contend that, according to *Norris*, supra, by partaking in a usurious transaction, First Alliance forfeited its right to seek anything other than the money it actually disbursed on the plaintiffs' behalf to pay off the principal balance of the Primary Loan and the Individual Loan. Hence, according to the plaintiffs, First Alliance could not collect any interest or cost associated with its June 1992 transaction including the origination fee originally imposed by Cobb Federal.

In view of our holding that First Alliance did not partake in a usurious transaction, the trial court correctly denied plaintiffs' motion for partial summary judgment. *Precise*, supra.

*Judgment affirmed in Case No. A96A0788. Judgment reversed in Case No. A96A0787. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED AUGUST 16, 1996 — 

*Powell, Goldstein, Frazer & Murphy, John T. Marshall, William V. Custer IV, Joseph D. Wargo*, for appellant.

*Kilpatrick & Cody, Stephen E. Hudson, Trent B. Speckhals*, for appellees.