CASHBACK CATALOG SALES,
INC., Plaintiff,

v.

James PRICE, Defendant.

No. CV199–120.

United States District Court,
S.D. Georgia,
Augusta Division.

March 20, 2000.

Stephen E. Curry, Augusta, GA, Thomas C. James, III, James, Bates, Pope & Spivey, LLP, Macon, GA, Stephen L. Ivie, Stephen L. Ivie, PC, Ashburn, GA, for Cashback Catalog Sales, Inc., plaintiffs.

John B. Long, Dye, Tucker, Everitt, Long & Brewton, PC, Angela Carter McElroy, McElroy & Toole, Augusta, GA, for James Price, defendants.

## ORDER

BOWEN, Chief Judge.

Before the Court in the captioned case is Plaintiff's Motion for Summary Judgment on Defendant's counterclaims. A hearing was held on March 14, 2000. Upon consideration of the parties' briefs, oral argument, and the relevant law, Plaintiff's motion is **DENIED.**

### I. Background

Plaintiff Cashback Catalog Sales, Inc. ("Cashback") is in the check cashing business. Defendant James Price ("Price") states that he saw a Cashback billboard advertising "advance cash" services. (Price Aff. ¶ 3.) Price went to Cashback's place of business in Hephzibah, Georgia in July 1998. Price wrote two checks payable to Cashback, each in the amount of $130. In return for each check, Price received $100 in cash and $30 in gift certificates redeemable through an independent mail-order catalog. The gift certificates cannot be redeemed for cash. Price avers that he was not given a catalog from which to order and that there was only one old catalog on the premises. (Price Aff. ¶ 10.) According to Price's counsel, the billboard advertisement did not mention catalog merchandise. Three days later, Price consummated a similar transaction, writing Cashback a check for $65. In return, Price received $50 cash and a $15 gift certificate. According to Price, the attendant at Cashback told him that his checks would not be cashed until a future payday. Price's next payday was approximately two weeks later, but he insists that he thought the checks would not be cashed until the end of August, a few weeks after his payday.

When he learned that the checks would be cashed sooner than he had thought, Price stopped payment on these three checks. After Cashback demanded payment, Price signed a payback agreement on December 15, 1998. In this agreement, Price promised to pay Cashback $380. Price agreed to pay $20 at the end of the month and $360 on January 29, 1999. (Ex. 3 to Griffin Aff.) Price wrote the three checks in July 1998 for a total of $325. It is not clear from the record why Price agreed to pay $380 in the payback agreement of December 15.

The amount in dispute changed again when Cashback filed suit in the Magistrate Court for Richmond County, Georgia in May 1999. Cashback's suit sought damages of $375. The form complaint filed in the Magistrate Court totals Price's debts as follows:

| CK# 2699 | CK & FEES | $ 65.00 |
|---|---|---|
| CK# 2852 | CK & FEES | $140.00 |
| CK# 2853 | CK & FEES | $130.00 |
| IN–STORE COLLECTION FEE | | $ 40.00 |

Wherefore, Plaintiff demands Judgment against the Defendant for the sum of $375.00 plus costs.

(Ex. 7 to Griffin Aff.) Both parties agree that Price wrote the second check for only $130.00. (Ex. B to Price Aff.) The discrepancy in the form Complaint may be the result of a clerical error.

Price asserted three counterclaims. Price alleges that Cashback made usurious

loans, failed to make disclosures required of lenders, and violated federal racketeering laws.[1] Cashback dismissed its Complaint against Price with prejudice. Cashback then removed Price's counterclaims to this Court.

When Price entered into these transactions, he filled out an application to establish an account with Cashback. The last two sentences at the bottom of the application read:

> I understand any returned check carries a $25 surcharge. There will be a $40 collection fee assessed on the unpaid balance after 15 days.

(Ex. 1 to Griffin Aff.) In the form application, Cashback insists, "We do not make loans, nor do we charge interest." (*Id.*)

Price stopped payment on checks totaling $325. Price avers that he made payments totaling $45. By Price's reckoning, the amount owed after these payments was only $280. Cashback, however, sought damages of $375. Price concludes that this difference must include interest or fees charged by Cashback. There is no evidence showing that this discrepancy represents interest charges.[2]

The dispute here on summary judgment is not about how much Price owes. At issue is whether Cashback has engaged in unlawful lending practices. Cashback maintains an advertisement in the local yellow pages under the subject heading "Loans." (Ex. A to Price Aff.) Cashback, however, insists that it did not loan any money to Price. Cashback declares that it does not charge interest or fees for cashing checks and that it makes no credit investigation of its customers.

Price asserts that the gift certificates are worthless. The gift certificates allow Cashback customers to purchase only catalog merchandise, which is allegedly overpriced. Interestingly, the catalog in the

record contains neither an order form, an address, an "800" number, a website, nor any ordering information whatsoever. Price concludes that the gift certificates are a subterfuge for unlawful interest.

It is not clear from the record exactly how Cashback earns money from the check cashing transactions. At oral argument, Cashback's counsel candidly admitted that he is unsure. Cashback's counsel states on belief that Cashback indemnifies the catalog company if and when customers use their gift certificates to order merchandise.

Neither Cashback nor any of its officers have any ownership interest in the mail-order catalog corporation. Cashback characterizes the mail-order business as an "independent gift catalog company." (Ans. to Rule 26.3 Mandatory Interrogs. ¶ 2.) Any Cashback customer can buy a gift certificate, even if he does not present a check for cashing. The price paid for a gift certificate is the same regardless of whether a customer cashes a check.

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th

---

1. Price filed his counterclaims on behalf of a class of Cashback customers. Price never filed a motion for class certification, however.

2. The more likely explanation is that Cashback simply sued for the face value of the three checks, leaving Price to file a counterclaim to setoff the $45 in payments allegedly made.

Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels,* 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus,* 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark,* 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor.

*Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick,* 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default (Doc. No. 13). Therefore, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. Analysis

Cashback dismissed its claim with prejudice. What remains now are Price's three counterclaims. The first is a claim that Cashback charged Price interest at a usurious rate. The second is a claim that Cashback failed to make disclosures required by the Truth in Lending Act. The third is a claim that Cashback attempted to collect an unlawful debt in violation of federal racketeering laws. Each claim will be considered in turn.

## A. Usury

 Price's usury claim arises under Georgia law. Price charges that his transactions with Cashback violated O.C.G.A. § 7-4-2, which establishes a maximum interest rate. This statute provides in pertinent part:

(a)(1)(A) The legal rate of interest shall be 7 percent per annum simple interest where the rate percent is not established by written contract. Notwithstanding the provisions of other laws to the contrary, except Code Section 7-4-18 [which provides a criminal sanction for charging interest in excess of five percent per month], the parties may establish by written contract any rate of interest, expressed in simple interest terms as of the date of the evidence of the indebtedness, and charges and any manner of repayment, prepayment, or [acceleration].

(2) Where the principal amount involved is $3,000.00 or less, such rate shall not exceed 16 percent per annum simple interest on any loan, advance, or forbearance to enforce the collection of any sum of money unless the loan, advance, or forbearance to enforce the collection of any sum of money is made pursuant to another law.

To establish a usury claim, Price must show the existence of four elements: (1) a loan or forbearance of money, either express or implied; (2) an understanding that the principal must be repaid; (3) an agreement to pay in return for such loan or forbearance a greater profit than is authorized by law; and (4) that the contract was made with an intent to violate the law. *Hershiser v. Yorkshire Condo-minium Ass'n, Inc.*, 201 Ga.App. 185, 186, 410 S.E.2d 455 (1991). To determine whether Cashback has engaged in usury, the substance and not merely the form of the transactions must be analyzed. *First Alliance Bank v. Westover, Inc.*, 222 Ga. App. 524, 527, 474 S.E.2d 717 (1996).

Cashback argues that it never made any loans to Price. Cashback also contends that the price paid for the gift certificates is not usurious interest. Price counters that the gift certificates are merely a sham and are, in effect, simple interest at a rate of 780%.[3] Price thus concludes that the transactions were usurious loans.

### 1. Whether Cashback Made a Loan Requiring Repayment

 A reasonable trier of fact could conclude that Cashback made loans to Price. Price must show that Cashback made "a loan or *forbearance* of money, either express or implied." *Hershiser*, 201 Ga.App. at 186, 410 S.E.2d 455 (emphasis added). By agreeing not to cash Price's checks until his payday, Cashback forbore its right to negotiate the checks. Price has presented evidence that Cashback advertises its services under the "Loans" section of the Yellow Pages. Price swears that he was never given a catalog from which to order merchandise and that he was never told how to order from the catalog.

That Cashback gave Price cash and gift certificates equal to the face value of the checks does not necessarily prove that the transactions were not loans. The Georgia Supreme Court has declared:

---

**3.** Computed as simple interest, the interest rate would be determined as follows:

$$\text{Interest} = (\text{Principal}) \times (\text{Rate}) \times (\text{Time})$$
$$\$30 = (\$100) \times (\text{Rate}) \times (2\ \text{weeks})$$
$$\text{Rate} = \$30/[\,(\$100) \times (2\ \text{weeks})\,]$$
$$\text{Rate} = 15\%/1\ \text{week}$$
$$\text{Rate} = [15\%/1\ \text{week}] \times [\,(52\ \text{weeks})/(1\ \text{year})\,]$$
$$\text{Rate} = 780\%\ \text{per year}$$

This computation assumes that two weeks elapse between a transaction and the presentment of the check. It also assumes that the gift certificates are interest.

The ingenuity of man has not devised a contrivance by which usury can be legalized, if it appears that the purpose of the scheme was to exact a larger profit for the use of the money actually advanced than [the lawful rate] .... [F]or the name by which the transaction is denominated is altogether immaterial if it appears that a loan of money was the foundation and basis of agreement which is under consideration.

*Bank of Luimpkin v. Farmers' State Bank,* 161 Ga. 801, 801, 132 S.E. 221 (1926). From the evidence presented, it could be concluded that the substance of the transactions was a loan. It is unlikely that a reasonable mind could come to some other conclusion.

Insofar as the face value of each check was the principal of a loan, the understanding that Cashback would cash the checks on Price's payday was an agreement that Price had to repay the principal. Therefore, there is evidence to establish the first two of the four elements of Price's usury claim.

### 2. Whether the Gift Certificates are Usurious Interest

Likewise, a reasonable trier of fact could conclude that the gift certificates are usurious interest. The gift certificates can only be used to purchase merchandise from a mail-order catalog. Price has shown that certain catalog items may cost far more than the market price of such merchandise. From the information and evidence presently before the Court, there is no order form or any material about actually ordering merchandise. If the gift certificates are practically worthless, as Price alleges, it stands to reason that many of Cashback's customers will fail to redeem them. If the gift certificates go unredeemed, their face value presumably inures to Cashback and becomes a cost of the loan.

Cashback vigorously disputes Price's claim that the gift certificates are unlawful interest. Cashback points out that Price can redeem the gift certificates for an equivalent amount of catalog merchandise. Cashback cites *Sledd v. Pilot Life Insurance Company,* 52 Ga.App. 326, 327, 183 S.E. 199 (1935), for the proposition that where the borrower receives valuable consideration in return for money paid in excess of the legal interest rate, the money paid in excess of the legal interest rate is not usury. Cashback therefore argues that Price paid no usurious interest.

Georgia law, however, requires a more critical and seasoned examination of the reality of the transactions. As Chief Justice Logan Bleckley eloquently wrote:

No disguise of language can avail for covering up usury, or glossing over an usurious contract. The theory that a contract will be usurious or not according to the kind of paper-bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance.

*Pope v. Marshall,* 78 Ga. 635, 640, 4 S.E. 116 (1887). When presented with payday loans like these, the Arkansas Supreme Court reasoned:

While the agreed statement shows that the articles of merchandise can be ordered through the lender's agent at fair prices, there is no pretense they can be had at bargain prices .... But it is unreasonable to expect needy persons, as a rule, to make full use of such a coupon, exacted from their necessity when they borrow a hundred dollars.

*Glover v. Buchman,* 104 S.W.2d 66, 67 (Tex.Civ.App. 1937). A reasonable trier of fact could conclude that the amount of the gift certificates are, in substance, interest charges paid by Price.

I make no factual finding, but it seems obvious to me that "check cashing" is the main event. The reduced advance is the

---

Where the principal is less than $3,000, the interest rate cannot exceed sixteen percent per year. O.C.G.A. § 7–4–2(a)(2).

hook. The gift certificate only makes it look better. It may be true that customers can buy a gift certificate even if they do not cash a check. Why or how often anyone would do such a thing would be an interesting inquiry. I cannot imagine a brisk business in gift certificates alone.

The *Sledd* case on which Cashback relies is distinguishable. In *Sledd,* the lender required the borrower to purchase a life insurance policy from any insurance company to serve as collateral for a loan. 52 Ga.App. at 327, 183 S.E. 199. The borrower argued that the insurance premium was a usurious excess over the legal rate of interest. *Id.* The court found that the life insurance premium cost no more than the customary rate charged to non-borrowers. *Id.* There was no basis for treating the life insurance purchase as a sham transaction. Here, however, Price has shown otherwise, having offered evidence that the merchandise in the catalog may be far more expensive than the market rate. It will be interesting to compare the amount Cashback actually pays to the catalog company with the amount of gift certificates it issues.

### 3. Whether Cashback Intended to Violate the Law

Cashback concedes that an intent to charge unlawful interest can be implied from the facts and circumstances which support the other three elements of a usury claim. *Dorfman v. Briah Assoc.,* 160 Ga.App. 359, 360, 287 S.E.2d 75 (1981). Cashback can rebut the inferences supported by Price's evidence. *Id.* Given the conflicting characterizations of the transactions, an issue of fact remains as to Cashback's intent. Because Price has come forward with evidence upon which a reasonable trier of fact could label the transactions usurious, summary judgment for Cashback is inappropriate.

### B. Truth–in–Lending Claim

■ The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* requires certain lenders to disclose information about loans. Failure to make these disclosures gives the borrower a civil cause of action. 15 U.S.C. § 1640(a). These disclosures are required of creditors that engage in consumer credit transactions. 15 U.S.C. § 1638(a). Thus, to establish a truth-in-lending claim, Price must show that Cashback is a creditor that engages in consumer credit transactions. *Gerlach v. Allstate Ins. Co.,* 338 F.Supp. 642, 647 (S.D.Fla.1972).

■ The transactions at issue were presumably consumer credit transactions. A "consumer credit transaction" necessarily involves credit extended for "personal, family, or household purposes." 15 U.S.C. § 1602(h). Because Cashback told Price that his checks would not be cashed until his next payday, Cashback extended "credit." 15 U.S.C. § 1602(e).

■ The question, then, is whether Cashback is a "creditor" within the meaning of the Truth in Lending Act. Cashback argues that it need not make any disclosures because it is not a creditor. Price responds that Cashback is, in substance, a lender and that the gift certificates are a ruse disguising its finance charges.

A "creditor" is:

a person who both (1) regularly extends ... consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f). It could be inferred from the nature of Cashback's business that Cashback regularly extends consumer credit. The checks were payable to Cashback. Thus, a reasonable trier of fact could conclude that Cashback is a creditor, provided that the check-cashing transactions involved a finance charge. A "finance charge" is:

the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly

or indirectly by the creditor as an incident to the extension of credit.

15 U.S.C. § 1605(a).

Just as a reasonable trier of fact could conclude that the gift certificates are usurious, a reasonable trier of fact could also conclude that the gift certificates are "finance charges" under the Truth in Lending Act. In fact, several federal cases have held that deferred-payment check cashing transactions are subject to the disclosure requirements of the Truth in Lending Act. *E.g., Turner v. E–Z Check Cashing of Cookeville, TN,* 35 F.Supp.2d 1042, 1047–48 (M.D.Tenn.1999); *Hamilton v. York,* 987 F.Supp. 953, 957–58 (E.D.Ky.1997). None of the documents in the record contains all the disclosures required by the Truth in Lending Act. Accordingly, summary judgment must be denied as to Price's truth-in-lending claim.

*C. RICO Claim*

■ The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), prohibits the investment and use of funds derived from certain organized criminal activity. RICO provides a civil remedy for people injured by the collection of an unlawful debt and other RICO violations. 18 U.S.C. § 1964(c). For RICO purposes, an "unlawful debt" is a gambling debt or a debt that is usurious under state or federal law. 18 U.S.C. § 1961(6). Because a reasonable trier of fact could conclude that the transactions at issue were usurious, summary judgment must also be denied as to Price's RICO claim.

## IV. Conclusion

Upon the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is **DENIED.** This case will proceed to trial accordingly.