GMAC COMMERCIAL MORTGAGE CORPORATION, Plaintiff,

v.

MAITLAND HOTEL ASSOCIATES, Limited, Thomas E. McIntyre and Larry Walker, Defendants.

No. 6:01–CV–542–ORL–31JG.

United States District Court, M.D. Florida, Orlando Division.

May 15, 2002.

**1356**

Craig E. Bertschi, Burleigh L. Singleton, Kilpatrick Stockton, L.L.P., Atlanta, GA, David R. Tyrrell, Patrick J. Risch, Hill, Ward & Henderson, P.A., Tampa, FL, for Plaintiff.

## ORDER

PRESNELL, District Judge.

On April 3, 2002, Magistrate Judge Glazebrook rendered a Report and Recommendation (Doc. 23), recommending that Plaintiff's Motion for Default Judgment (Doc. 17) be granted. No objections to that report have been filed. Accordingly, it is

**ORDERED** that Judgment be entered on behalf of Plaintiff, GMAC Commercial Mortgage Corp. and against Defendants, Maitland Hotel Associates, Limited, Thomas E. McIntyre and Larry Walker, jointly and severally, in total amount of $946,960.25, with post-judgment interest accruing hereafter as provided by law.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

TO THE UNITED STATES DISTRICT COURT

This cause came on for an evidentiary hearing on January 15, 2002 on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST MAITLAND HOTEL ASSOCIATION, THOMAS E. MCINTYRE, AND LARRY WALKER (Doc. No. 17)** |
| **FILED:** | **December 19, 2001** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I. BACKGROUND

Plaintiff GMAC Commercial Mortgage Corporation ["GMAC"] is a California corporation with its principal place of business in Horsham, Pennsylvania. GMAC is engaged in the business of providing commercial lease financing to businesses. Defendant Maitland Hotel Associates, Ltd., ("Maitland") is a limited partnership organized under the laws of Florida with its place of businesses in Orlando, Florida. The general partner of Maitland is Aantseme Partners, Inc., which is a Florida corporation. Byrd F. Marshall is the registered agent for Maitland. Defendant Thomas E. McIntyre ("McIntyre"), a citizen of Florida, is the Executive Vice President of Aantseme Partners. Defendant Larry Walker ("Walker") is also a citizen of Florida.

On behalf of Maitland's general partner, Aantseme Partners, McIntyre signed and executed a Master Equipment Lease (the "Lease") with GMAC on January 5, 2000. *See* Lease at Docket No. 1, Ex. A. The Lease is governed by the laws of the State of Georgia. *See* Lease at ¶ 27(h). According to the Lease, GMAC provided $1.2 million in lease financing to Maitland for furniture, fixtures, and equipment. The furniture, fixtures, and equipment constituted the collateral for the Lease. Maitland agreed to make 48 consecutive monthly rental payments in an amount "based upon the aggregate cost of the equipment and the [interest] rate based on corresponding 4–year Treasury on the date of the final disbursement under the lease agreement plus 550 basis points." Lease at ¶ 5(a). At closing, it was determined that Maitland's monthly rental payment would be $34,465.20.

The Lease provides that failure to make a monthly rental payment on the first of each month or within 30 days thereafter is an event of default. Lease at ¶ 18. On March 1, 2000, Maitland made the first of its monthly rent payments. Paragraph 19(a)(ii) of the Lease provides that, in the event of default, GMAC has the right to declare all of Maitland's debt immediately due and payable. Paragraph 19(a)(v) of the Lease provides that, in the event of default, GMAC has the right "to enter upon the premises where the [collateral] is located and take immediate possession of and remove the same by summary proceedings or otherwise." [1]

The Lease also provides that, in the event of default for failure to make timely payments, Maitland is obligated to pay a late fee of 5% of each delinquent payment. Lease at ¶ 20(a). The Lease further provides that, in the event of such default, Maitland is obligated to pay interest from the date of default at a rate of "1.5% per month (or the maximum amount permitted by law to be collected if such role exceeds the maximum legal rate)." Lease at ¶ 20(b). In addition, the Lease provides that Maitland is obligated to pay all costs, including reasonable attorney's fees, incurred in enforcing the terms of the lease or in collecting payments under the Lease. Lease at ¶ 19(b).

On August 4, 1999, McIntyre and Walker executed a Guaranty Agreement ("Guaranty") in connection with the Lease. *See* Guaranty at Docket No. 1, Ex. B. Pursuant to the Guaranty, McIntyre and Walker each "absolutely and unconditionally guarantee[d] the prompt payment and satisfaction" of Maitland's financial obligations under the Lease. The Guaranty provides that McIntyre and Walker each "shall be liable to [GMAC] for ... all costs (including without limitation reasonable fees and expenses of legal counsel, whether retained firms or in-house incurred by [GMAC]) in enforcing performance of or collecting any payments due under the Guaranty." Guaranty at ¶ 9.

As of November 8, 2000, Maitland's account with GMAC had a past due balance in the amount of $74,100.18, plus interest, late fees, and attorney's fees. On November 16, 2000, GMAC's counsel sent, by letter, a demand for immediate payment of the past due balance, and notified McIntyre and Walker of the past due account. *See* November 16, 2000 Letter, Docket No. 1, Ex. C. As of April 27, 2001, Maitland's

---

1. At the January 15, 2002 hearing, GMAC advised this Court that Maitland still possessed the furniture, fixtures, and equipment. As of that date, GMAC had not exercised its right to take immediate possession of the collateral.

account with GMAC had a past due balance in the amount of $103,395.60, plus interest, late fees, and attorney's fees. *See* Docket No. 22, Ex. 2 at ¶ 10. Similarly, as of April 27, 2001, the obligations of McIntyre and Walker pursuant to the Guaranty were $103,395.60, plus interest, late fees, and attorney's fees. *See* Docket No. 22, Ex. 2 at ¶ 10. Claiming a default on the rent obligations, GMAC accelerated the total balance due under the Lease and Guaranty. According to the complaint, the *total* balance due under the Lease is $1,240,747.20. *See* Docket No. 1 at ¶ 32

On May 2, 2001, GMAC brought the present action to recover its damages from defendants. Docket No. 1. On May 24, 2001, GMAC effected personal service upon both McIntyre and Walker. Docket Nos. 13 and 14. On May 25, 2001, GMAC effected personal service upon Maitland by service on registered agent Byrd F. Marshall. On September 24, 2001, GMAC moved for an entry of default against defendants. Docket No. 10. On the same day, the Clerk entered a default. Docket No. 15. On November 19, 2001, GMAC moved for entry of default judgment. Docket No. 17. On December 13, 2001, the Court scheduled an evidentiary hearing on GMAC's motion for default judgment against Maitland, McIntyre, and Walker for January 15, 2002. On January 10, 2002, GMAC filed a second, and duplicative, motion for default judgment against Maitland, McIntyre, and Walker with supporting affidavit.

On January 15, 2002, the Court held an evidentiary hearing on GMAC's December 13, 2001 motion for default judgment. Maitland, McIntyre, and Walker failed to appear at the hearing. At the hearing, the Court denied GMAC's January 10, 2002 motion for default judgment [Docket No. 20] as duplicative of the earlier-filed December 13, 2001 motion that had been noticed for hearing on January 15, 2002. At the hearing, the Court considered all of the evidence introduced by GMAC, including the supporting affidavits attached to the January 10, 2002 motion at Docket No. 20.

## II. *THE LAW*

### A. *Default Judgment*

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed.R.Civ.P. 55(a). Rule 55(b)(2) further provides:

> In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury

to the parties when and as required by any statute of the United States.

■ The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Nishimatsu Construction v. Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir.1975). A default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corporation,* 123 F.3d 1353, 1370 n. 41 (11th Cir.1997), *citing Nishimatsu,* 515 F.2d at 1206. A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987), *citing Nishimatsu,* 515 F.2d at 1206.

### B. *Attorney's Fees*

■ Under Georgia law, the applicable law in this diversity case, contract provisions authorizing the recovery of attorney's fees by a prevailing party are enforceable. Ga.Code § 13–1–11(a)(2) provides for the enforcement of attorney fees provisions in promissory notes, as follows: 15% of the first $500 of outstanding principal and interest due and owing on an agreement, and 10% of the outstanding principal and interest in excess of $500, provided the note is collected by or through an attorney after maturity.[2] However, the prevailing party must established that it has incurred fees in a specific amount in order to recover the maximum. *S & A Industries, Inc. v. Bank Atlanta,* 247 Ga.App. 377, 543 S.E.2d 743, 749 (2000). So long as the attorney fee provision of a promissory note does not violate the strictures of Ga.Code § 13–1–11(a), it is enforceable.

### C. *Late Charges and Interest*

■ Ga.Code § 7–4–18(a) sets out the criminal penalty for usury and provides that no loan shall charge "any rate of interest greater than 5 percent per month either directly or indirectly, by way of commission for advances, discount, exchange, or the purchase of salary or wages; by notarial or other fees; or by any contract, contrivance, or device whatsoever." The Supreme Court of Georgia has held that any loan violating this section is illegal and results in the lender's forfeiture of interest, but not principal, on the loan. *Norris v. Sigler Daisy Corp.,* 260 Ga. 271, 392 S.E.2d 242 (1990).

---

2. Ga.Code 13–1–11(a)(1) and (2) states:
   (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions:
   (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness;
   (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

But the criminal usury statute must be read in conjunction with Ga.Code § 7–4–2, which sets out the legal rate of interest. Under Ga.Code § 7–4–2(a)(1)(A), the legal rate of interest of seven percent per annum applies where a rate percent is not established by written contract. Under this subsection, the parties to a loan of more than $3,000 and less than $250,000 are allowed to establish any rate of interest in their contract subject to the usury provisions of Ga.Code § 7–4–18. The language of Ga.Code § 7–4–2(a)(1)(B), however, provides that parties to a loan of $250,000 or more may establish any rate of interest. Section 7–4–2(a)(1)(B) does not *specifically* invoke the limitations of Georgia's criminal usury statute, Ga.Code § 7–4–18.

The opinions of the Georgia courts are in conflict as to whether the criminal usury statute applies to loans of $250,000 or more. In at least one case, a Georgia court applied the criminal usury law to loans exceeding $250,000. *See First Alliance Bank v. Westover, Inc.,* 222 Ga.App. 524, 474 S.E.2d 717 (1996). But in *Barton v. Marubeni America Corp.,* 204 Ga.App. 346, 419 S.E.2d 342 (1992), a Georgia court held, without analysis, that Georgia's usury provisions did not apply to a note in excess of $2.3 million. *See also MOM Corp. v. Chattahoochee Bank,* 203 Ga.App. 847, 418 S.E.2d 74 (1992) (holding interest on loan was not usurious *per se* ).

In the present case, GMAC originally sought 5% monthly late charge and 1.5% monthly interest rate. The two charges amount to 6.5% in monthly late charges and interest that may *arguably* exceed the 5% monthly limit of Ga.Code § 7–4–18. However, this Court need not decide whether the late charges and interest sought here are subject to Georgia's crimi-nal usury statute. On inquiry by the Court at the evidentiary hearing, GMAC waived its claim to the 1.5% monthly interest charge.

### III. *ANALYSIS*

■ Having fully considered GMAC's arguments and the record, the Court finds that Maitland has defaulted on its obligations under the Lease by failing to make the required monthly rent payments on or within 30 days of the first of each month as required by the Lease. As of April 27, 2001, Maitland's Lease had a past due balance of $103,395.60. McIntyre and Walker similarly have defaulted on their obligations under the Guaranty by failing to make payment of Maitland's rent obligations pursuant to the Guaranty. Pursuant to the Lease, GMAC has accelerated and is entitled to the total balance due under the Lease and Guaranty. Accordingly, GMAC is entitled to recover $930,560 in outstanding principal plus late fees, interest, and attorney's fees.

To avoid possible application of the Georgia criminal usury statute, at the January 15, 2002 hearing, GMAC waived its claim to the 1.5% monthly interest charge on each late payment. GMAC now seeks only the late fees in the amount of 5% of each late monthly rent payment. The monthly rent payment was $34,465.20. Therefore, the late fee for each delinquent payment was $1,723.26. As of January 15, 2002, the total amount due in late charges was $6,955.10. Pursuant to the Lease and Georgia law, GMAC, therefore, is entitled to $6,955.10 in late fees.

■ GMAC is the prevailing party. Pursuant to the Lease, GMAC is entitled to recover legal fees and costs associated with the collection of Maitland's debt.

GMAC seeks to recover $9,560.30 in total fees and costs incurred by GMAC through January 9, 2002. Having reviewed the supporting documentation, *see* Docket No. 20, Ex. 3 and 4, the Court determines that counsel's rates are reasonable, and that counsel worked the requested hours in this case. However, the legal fees and costs sought exceed the amount allowable under Ga.Code § 13–1–11(a)(2).

The Lease in this cases does not provide for attorney's fees in some specific percent of the principal and interest owing. Consequently, GMAC's award of attorney's fees may not exceed 15% of the first $500 of principal and interest owing on the Lease, plus 10% of the amount of principal and interest owing thereon in excess of $500. *See* Ga.Code § 13–1–11(a)(2). Here, the principal and late fees owed under the Lease total $937,515.10 ($930,-560 in principal plus $6,955.10 in late fees). An award for fees for collection of the debt owed, therefore, must not exceed $9,445.15—an amount that represents $75 (15% of $500) plus $9,370.15 (10% of $937,015.10). GMAC's request to recover $9.560.30 should be **GRANTED** only to the extent of $9,445.15 (merely $115.15 less that the amount requested). Accordingly, it is

**RECOMMENDED** that GMAC Commercial Mortgage Corporation's motion for default judgment [Docket No. 17] against Maitland Hotel Associates, Ltd., Thomas E. McIntyre, and Larry Walker be **GRANTED**. It is

**FURTHER RECOMMENDED** that GMAC be awarded $930,560 in outstanding principal, $6,955.10 in late fees, and $9,445.15 in attorney's fees and costs, for a total amount of $946,960.25 against Maitland Hotel Associates, Ltd., Thomas E. McIntyre, and Larry Walker, jointly and severally, with post-judgment interest at the rate allowed by law. It is

**FURTHER ORDERED** that the Clerk of Court shall serve a copy, by registered mail, of this Report and Recommendation to: GMAC's in-house counsel, Catherine Ibold, at 3250 N. Orange Blossom Trail, Orlando, Florida 32801; GMAC's registered agent Byrd F. Marshal, 201 G. Pine Street, Suite 1200, Orlando, Florida 32801; Larry Walker, 1880 Via Contessa, Winter Park, Florida 32789; and Thomas McIntyre, 6319 Pine Glen Lane, Ocala, Florida 32819

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

April 3, 2002.